Amended

# UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MISSOURI

**Jason Beck and Kevin Scott, Plaintiffs,** v. **The Boeing Company et al, Defendant.**

Case No. 4:25-cv-01154-JSD

## I. Introduction

**1.** This is an employment discrimination and retaliation action arising from Defendant's unlawful employment practices at GKN Aerospace's Advanced Composite Center, now owned by Boeing via asset purchase.

**2.** Plaintiffs Jason Beck and Kevin Scott were subjected to racial discrimination, adverse employment actions, and retaliation for exercising their rights under federal and state law.

**3.** Jason Beck brings federal claims under Title VII of the Civil Rights Act and the National Labor Relations Act (NLRA). Kevin Scott brings state law claims under the Missouri Human Rights Act (MHRA) and federal claims under the Family and Medical Leave Act (FMLA).

**4.** Boeing, as successor to GKN Aerospace, is liable for the discriminatory and retaliatory conduct that occurred before and during its acquisition.

## II. Jurisdiction and Venue

### A. Jurisdiction

**5.** This Court has original jurisdiction over Jason Beck's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

**6.** Kevin Scott's MHRA and FMLA claims arise under Missouri and federal law, respectively. This Court has supplemental jurisdiction over Kevin Scott's MHRA claims pursuant to 28 U.S.C. § 1367(a) because they arise from the same core facts as Jason Beck's federal claims.

**7.** The "common nucleus of operative fact" test is satisfied because both plaintiffs were subjected to discriminatory and retaliatory practices by GKN management, which continued under Boeing. See United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

### B. Venue

**8.** Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to the claims occurred within this District.

## III. Parties

### A. Plaintiffs

**9.** Jason Beck is an individual who was employed at GKN Aerospace and received a Right-to-Sue letter from the EEOC, enabling him to bring federal claims.

**10.** Kevin Scott is an individual who was employed at GKN Aerospace from July 2017 to October 2023 and received a Right-to-Sue letter from the Missouri Commission on Human Rights, enabling him to bring state law claims and federal FMLA claims.

### B. Defendant

**11.** The Boeing Company is the successor in interest to GKN Aerospace's Advanced Composite Center. Boeing acquired GKN through an asset purchase in 2024 and is therefore liable for GKN's discriminatory and retaliatory actions.

## IV. Factual Allegations

### A. Employment Background

**12.** Jason Beck was employed at GKN Aerospace from 2014 to June 2024. Kevin Scott was employed at the same facility from July 2017 to October 2023.

**13.** Both plaintiffs are members of racial minority groups and thus part of protected classes under federal and state law.

**14.** Plaintiffs consistently performed their job duties at a satisfactory or above-satisfactory level, as reflected in performance evaluations (see Performance Evaluations dated June 2019, December 2020, September 2022).

### B. Protected Activity and Complaints

**15.** On April 2, 2021, Kevin Scott filed an internal HR complaint regarding repeated denial of promotion opportunities due to racial bias (see HR Complaint dated April 2, 2021).

**16.** On May 10, 2021, Kevin Scott submitted a complaint highlighting discriminatory scheduling and denial of overtime (see HR Complaint dated May 10, 2021).

**17.** Both plaintiffs participated in meetings with HR and union representatives regarding these complaints, including a mediation session on July 15, 2021 (see Union Mediation Notes dated July 15, 2021).

### C. Adverse Employment Actions

**18.** Following these complaints, plaintiffs experienced systemic racial discrimination, including denial of promotions, training, and overtime opportunities while employed at GKN Aerospace.

**19.** Kevin Scott experienced a reduction in overtime hours beginning June 2021 (see Payroll Records June 2021).

**20.** On September 20, 2022, Kevin Scott was reassigned to less favorable projects (see Project Assignment Records).

**21.** On October 5, 2022, Kevin Scott received a written disciplinary warning citing vague performance issues (see Disciplinary Notice dated October 5, 2022).

**22.** Jason Beck experienced denial of promotions, reduced access to training opportunities, and a hostile work environment (see HR Complaint dated March 15, 2024).

### D. Continuing Pattern and Retaliation

**23.** Defendant interfered with Kevin Scott's FMLA leave rights, including denial of leave requests during his employment (see FMLA Records 2022–2023).

**24.** Following Boeing's acquisition of GKN in July 2024, plaintiffs continued to experience adverse employment actions, including retaliation for prior complaints (see Post-Acquisition HR Records).

**25.** Boeing failed to file its federally mandated EEO-1 reports for 2023, 2024, and 2025, concealing workforce demographic data relevant to plaintiffs' claims (see EEOC Reporting Records).

**26.** The missing EEO-1 data is material to establishing disparate impact and systemic discrimination, and Boeing's failure to produce it constitutes spoliation (see EEOC Guidance).

**27.** Jason Beck filed a formal EEOC charge on March 15, 2024, and received a Right-to-Sue letter on June 20, 2025 (see EEOC Right-to-Sue Letter).

**28.** Kevin Scott filed a complaint with the Missouri Commission on Human Rights and received a Right-to-Sue letter on July 15, 2025 (see MHRA Right-to-Sue Letter).

### E. Successor Liability – Boeing

**29.** Boeing acquired GKN on July 1, 2024, continued operations, and maintained employment practices that disadvantaged and retaliated against plaintiffs (see Acquisition Records).

**30.** Both plaintiffs' claims are therefore actionable against Boeing under successor liability principles, as confirmed by Clarke v. Kraft Foods, 464 F.3d 1117 (8th Cir. 2006).

### F. Common Nucleus of Operative Facts

**31.** Plaintiffs' claims arise from the same course of conduct: discriminatory treatment, denial of promotions, reduced overtime, retaliatory disciplinary actions, and hostile work environment.

**32.** Facts supporting Jason Beck's federal claims are fully intertwined with Kevin Scott's MHRA and FMLA claims.

**33.** Kevin Scott's denied promotion on August 1, 2021, constitutes discriminatory treatment under the MHRA.

**34.** Retaliatory reassignment of Kevin Scott coincides with his reduction in overtime, demonstrating a unified pattern of adverse action.

## V. Claims

### A. Count I – Title VII Discrimination (Jason Beck)

**35.** Defendant unlawfully discriminated against Jason Beck based on race.

### B. Count II – Title VII Retaliation (Jason Beck)

**36.** Defendant retaliated against Jason Beck for engaging in protected activity.

### C. Count III – FMLA Interference (Kevin Scott)

**37.** Defendant interfered with Kevin Scott's FMLA leave rights.

### D. Count IV – FMLA Retaliation (Kevin Scott)

**38.** Defendant retaliated against Kevin Scott for exercising FMLA rights.

### E. Count V – NLRA Violation (Jason Beck)

**39.** Defendant violated Jason Beck's rights under the NLRA by retaliating against him for engaging in protected concerted activity, including participation in union discussions and protected workplace complaints.

### F. Count VI – MHRA Discrimination (Kevin Scott)

**40.** Defendant discriminated against Kevin Scott on the basis of race.

### G. Count VII – MHRA Retaliation (Kevin Scott)

**41.** Defendant retaliated against Kevin Scott for engaging in protected activity, including filing HR complaints.

### H. Count VIII – Adverse Inference / Spoliation (Both Plaintiffs)

**42.** Boeing failed to file mandatory EEO-1 reports for 2023–2025, constituting spoliation. Plaintiffs request sanctions and adverse inference.

## VI. Prayer for Relief

Plaintiffs request the Court to:

**A.** Award back pay and front pay;

**B.** Award compensatory and punitive damages;

**C.** Issue injunctive relief prohibiting further discrimination and retaliation;

**D.** Order reinstatement if appropriate;

**E.** Award attorneys' fees, costs, and interest;

**F.** Grant any other relief the Court deems just and proper.

MEMORANDUM IN SUPPORT OF SUCCESSOR LIABILITY

I. Introduction

Plaintiffs Jason Beck, Kevin Scott, and Deborah Davis seek to hold The Boeing Company ("Boeing") liable as a successor to GKN Aerospace Services, Inc. ("GKN") for ongoing discrimination and retaliation at the Advanced Composite Center ("ACC") in St. Louis, Missouri. Although Boeing acquired the ACC via an asset purchase, courts have recognized that a successor corporation may be held liable for predecessor acts where the transaction preserves continuity of business operations and employment relationships.

II. Legal Standard for Successor Liability

Under federal law, a successor employer may be liable for discriminatory practices of its predecessor under certain circumstances, even where the acquisition is structured as an asset purchase:

1. Continuity of Business Operations

Liability may attach when the successor continues substantially the same business as the predecessor, including the same workforce, facilities, management, and operational policies.

See Perfectly Clear, Inc. v. Campbell, 39 F.3d 495, 499 (8th Cir. 1994) (successor liable where it continued the predecessor's operations with same employees and management).

2. Notice of Claims and Protected Status

A successor with knowledge of ongoing discrimination claims or pending EEOC charges may be held liable if it perpetuates discriminatory practices.

See Board of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Systems, Inc., 563 U.S. 776, 785 (2011) (successor aware of legal obligations may assume liability for prior claims).

3. "Perfectly Clear Successor" Doctrine

Even in asset acquisitions, a successor is liable when it makes it "perfectly clear" to employees that their prior employment status, seniority, and terms will be maintained, but then implements policies that expose them to discriminatory treatment.

See First Student, Inc. v. NLRB, 935 F.3d 604, 609 (D.C. Cir. 2019); NLRB v. Burns Int'l Sec. Servs., Inc., 406 U.S. 272, 281–85 (1972).

4. Equitable Considerations

Courts also recognize that imposing liability on a successor prevents circumvention of anti-discrimination laws through technical asset transfers.

See Darby v. Aetna Life Ins. Co., 55 F.3d 306, 309–10 (7th Cir. 1995) (asset purchasers cannot evade liability when they continue the same operations and workforce).

III. Application to Boeing's Acquisition of GKN ACC

1. Continuity of Operations

Boeing retained the same ACC facility, substantially the same workforce, and the same management responsible for prior discriminatory practices.

Plaintiffs continued performing the same work under the same policies post-acquisition.

2. Knowledge of Pending Discrimination Claims

Boeing had actual or constructive notice of ongoing EEOC complaints and internal grievances filed by Plaintiffs and other employees regarding racial discrimination, denial of promotions, and retaliatory practices.

3. Probationary Policies and Retaliation

Boeing implemented a 120-day probation for longstanding employees, which disproportionately affected

Black employees and perpetuated discriminatory treatment.

This action, combined with the continuation of GKN management, establishes that Boeing assumed liability for predecessor practices.

4. Asset Purchase Is Not a Shield

Courts consistently hold that formal asset purchase structures do not absolve successors of liability when there is substantial continuity of business operations and workforce.

See Darby, 55 F.3d at 309–10; Perfectly Clear, 39 F.3d at 499.

IV. Conclusion

Boeing's acquisition of GKN ACC, though structured as an asset purchase, does not shield it from liability for discrimination and retaliation. The continuity of operations, retention of GKN management and employees, and knowledge of ongoing EEOC charges satisfy the "perfectly clear successor" and equitable principles recognized in federal case law.

Therefore, Boeing is properly named as a defendant and may be held jointly and severally liable for the discriminatory and retaliatory actions at the ACC facility.

Respectfully submitted,

Date: _____

Signature: _____

Jason Beck, and Kevin Scott,

(Pro Se Plaintiff

## Chronological Case Timeline

| Date / Timeframe | Event Description | Relevant Exhibit(s) | Relevance / Purpose |
|---|---|---|---|
| Nov 2014 | Jason Beck begins working at GKN Aerospace | N/A | Establishes tenure and qualifications |
| May 2020 | Kevin Scott files HR complaint regarding denied OV stamps | Exhibit C | Protected activity; shows early retaliation trigger |
| May 2021 | Kevin Scott files complaint with Labor Relations | Exhibit D | Protected activity and continuing pattern |
| July 2021 | HR acknowledgment email re: OV Stamp request | Exhibits E, K | Evidence of repeated denial; demonstrates ongoing retaliation |
| Feb 9, 2022 | EEOC settlement of prior claims | Exhibit R | Marks protected activity; foundation for retaliation claims |
| Apr 16, 2022 | FMLA leave used; attendance point applied | Exhibits U1–10, Exhibit (2 {1-2}) | Shows interference with FMLA rights / retaliation |
| Apr 20, 2022 | "Sleeping on the job" write-up citing barred prior discipline | Exhibits Q1–6, Exhibit (3) and (4) | Breach of settlement; evidence of retaliation |
| Mid-June 2022 | Seniority reports show Trip Miller has less seniority than Kevin Scott | Exhibits M | Undermines promotion rationale; supports retaliation theory |
| Mid–Late 2022 | Ongoing denials of OV stamps and promotion opportunities | Exhibits S1–2, T1–2 | Establishes continuing retaliation and economic harm |

| Apr 26, 2024 | Boeing acquires GKN ACC | Exhibits V, L, M | Establishes successor liability; Boeing continuation of GKN practices |
| Early June 2024 | Minor Loxin error; increased scrutiny begins | Exhibit O | Pretext for disciplinary escalation and retaliatory termination |
| Jun 2023 | Reassignment from machine; denied Sunday OT | Exhibit N (if available) | Retaliatory reduction in hours and opportunities |
| Union Handbook (ongoing) | Confirms material benefits of OV stamp | Exhibits S1–2, T1–2 | Shows denial had economic impact; supports damages |
| 2024 | Boeing imposes 120-day probationary period on all employees post-acquisition, including long-term Black employees | N/A | Relevance to Counts 3 and 4 |
| 2024 | Jason Beck participates in Boeing feedback breakfast, raises racial disparity concerns; told by manager John Cunningham he is being 'watched closely' | N/A | Direct evidence of retaliation and discriminatory scrutiny |

EXHIBIT INDEX

Exhibit A – Kevin Scott CS Stamp, Track 1 OV Stamp, and Track 20 certification requests
(Relevance: Shows Kevin's denied advancement opportunities despite qualifications, supporting claims of racial discrimination and retaliation.)

Exhibit B – 2019 Email from Supervisor Mark Corey requesting stamps
(Relevance: Documents managerial awareness and denial without justification, evidencing discriminatory treatment.)

Exhibit C – May 2020 HR complaint with Susan Hemmer
(Relevance: Demonstrates Kevin protected activity and management's lack of response.)

Exhibit D – May 2021 HR complaint with Labor Relations Manager Kelly Niedringhaus
(Relevance: Evidence of repeated attempts to address discrimination and failure of remedial action.)

Exhibit E – July 2021 acknowledgment email from Kelly Niedringhaus
(Relevance: Confirms recognition of the issue but no corrective action, showing systemic negligence.)

Exhibit F – Grievance regarding systemic discrimination in promotions
(Relevance: Supports evidence of a pattern of discriminatory practices in promotion and training.)

Exhibit G – EEOC Complaint 560-2021-02539 and mediation settlement
(Relevance: Establishes prior protected activity and resolution, foundational to retaliation claims.)

Exhibit H – [Placeholder if needed for additional documentation]
(Relevance: N/A)

Exhibit I (1-2) – OV Track 1 and Track 20 stamps awarded to less senior white employee Trip Miller
(Relevance: Demonstrates disparate treatment in promotions, supporting retaliation and discrimination claims.)

Exhibit J – EEOC Charge 560-2023-00405 concerning retaliation
(Relevance: Documents ongoing retaliation following protected activity, reinforcing pattern of misconduct.)

Exhibit K – July 2021 OV Stamp follow-up email
(Relevance: Evidence of inaction after acknowledgment, supporting claims of continued discrimination.)

Exhibit L – OV certification awarded to Trip Miller
(Relevance: Shows favoritism towards white employee despite Kevin's qualifications and seniority.)

Exhibit M – OV Track 20 certification awarded to Trip Miller
(Relevance: Further proof of disparate treatment in certification and promotion.)

Exhibit N – [Placeholder if needed for additional documentation]
(Relevance: N/A)

Exhibit O – EEOC Charge 560-2024-03635 filed by Jason Beck
(Relevance: Demonstrates retaliation after Boeing acquisition, supporting successor liability claim.)

Exhibit P – [Placeholder if needed for additional documentation]
(Relevance: N/A)

Exhibit Q1-6 – April 20, 2022, write-up and June 2, 2022 grievance regarding retaliation
(Relevance: Provides documentation of retaliatory discipline and breach of settlement agreement.)

Exhibit R – HR grievance meetings attended by Jason Beck supporting Kevin Scott
(Relevance: Demonstrates Jason's involvement in protected activity and retaliation risk.)

Exhibit R1-4 – EEOC Interview participation May 31, 2022 by Jason Beck
(Relevance: Documents protected activity and continuing retaliation post-EEOC settlement.)

Exhibit S1-2 – Reassignment and denial of Sunday overtime for Kevin Scott
(Relevance: Evidence of retaliatory work environment and unequal treatment.)

Exhibit T1-2 – Stewart grievances filed by Jason Beck
(Relevance: Supports claims of protected concerted activity and retaliatory interference.)

Exhibit U1-10 – FMLA leave incident April 16, 2022
(Relevance: Shows interference with protected FMLA rights, forming basis for FMLA retaliation claim.)

Exhibit V – Union-meeting statements referencing list of targeted employees
(Relevance: Demonstrates knowledge and collusion in retaliation against protected employees.)

Exhibit W – MCHR Right to Sue letter issued August 8, 2025
(Relevance: Confirms exhaustion of administrative remedies and basis for federal lawsuit.)

Exhibit 1 (1-29) – Overtime records and Article 25 CBA provisions
(Relevance: Supports claims of manipulated overtime distribution and disparate treatment in violation of union agreements.)

Plaintiffs, file this Amended Complaint against The Boeing Company and other applicable
defendants, incorporating additional factual allegations concerning Boeing's acquisition of
GKN Aerospace's Advanced Composite Center and its successor liability for the continuation
of discriminatory and retaliatory practices initiated under GKN management.

Original Complaint Allegations

Jason Beck Supporting Statement

-----------------------------------------

Background and Allegations of Discrimination and Retaliation

Submitted by Jason Beck

I began working at GKN Aerospace in November 2014, operating the Loxin CNC machine for
over seven years with excellent attendance and no disciplinary record. Over time, I became
involved in supporting my co-worker, Kevin Scott, who had begun filing complaints with HR
and Labor Relations regarding discriminatory practices at GKN, specifically around the lack
of promotion and fair treatment for Black employees.

I supported Kevin  in both HR grievance meetings and through union advocacy as a shop
steward.  **(Exhibit R and T).**

Kevin Scott– Supporting Testimony and Similar Retaliation

 Also the MCHR  finished its proceedings and issue me a right to sue letter on Aug 8 2025
and I also have on **(Exhibit W)**  That I was waiting for the MCHR to finished up its
inverstigation in which it did and issue me on the 8th.   **(Post Settlement**) Kevin had more
seniority than many others in our department, including Trip Miller, a white employee who
transferred into the department after me. Despite this, management continually denied
Kevin advancement, including essential stamps and certifications (CS Stamp, Track 1 OV
Stamp, and Track 20), even after he completed all required training and on-the-job hours.
**(Exhibit A)**

In 2019, Kevin then-supervisor Mark Corey emailed multiple departments to request these
stamps on his behalf, but was denied without justification**.( Exhibit B)**  Kevin filed multiple
HR complaints, including one in May 2020 that led to a meeting with HR Manager Susan
Hemmer. **(Exhibit C)** In May 2021, He filed another complaint with Labor Relations
Manager Kelly Niedringhaus, **(Exhibit D**) again requesting the Track 1 OV Stamp and
raising the issue of being passed over for training on the new AGFM machine, which I
eventually did learn. However, once again, there was no follow-up or resolution.

## Amended Complaint

Plaintiffs, by and through their undersigned counsel, hereby file this Amended Complaint against The Boeing Company and other applicable defendants, incorporating additional factual allegations concerning Boeing's acquisition of GKN Aerospace's Advanced Composite Center and its successor liability for the continuation of discriminatory and retaliatory practices initiated under GKN management.

Original Complaint Allegations

Jason Beck Supporting Statement

----------------------------------------

Background and Allegations of Discrimination and Retaliation

Submitted by Jason Beck

I began working at GKN Aerospace in November 2014, operating the Loxin CNC machine for over seven years with excellent attendance and no disciplinary record. Over time, I became involved in supporting my co-worker, Kevin Scott, who had begun filing complaints with HR and Labor Relations regarding discriminatory practices at GKN, specifically around the lack of promotion and fair treatment for Black employees.

I supported Kevin alongside my co-worker Deborah Davis, both in HR grievance meetings and through union advocacy as a shop steward.  **(Exhibit R and T).**

Kevin Scott– Supporting Testimony and Similar Retaliation

 Also the MCHR  finished its proceedings and issue me a right to sue letter on Aug 8 2025 and I also have on **(Exhibit W)**  That I was waiting for the MCHR to finished up its inverstigation in which it did and issue me on the 8th.  **(Post Settlement)** Kevin had more seniority than many others in our department, including Trip Miller, a white employee who transferred into the department after me. Despite this, management continually denied Kevin advancement, including essential stamps and certifications (CS Stamp, Track 1 OV Stamp, and Track 20), even after he completed all required training and on-the-job hours. **(Exhibit A)**

In 2019, Kevin then-supervisor Mark Corey emailed multiple departments to request these stamps on his behalf, but was denied without justification.**( Exhibit B)**  Kevin filed multiple HR complaints, including one in May 2020 that led to a meeting with HR Manager Susan

Hemmer. **(Exhibit C)** In May 2021, He filed another complaint with Labor Relations Manager Kelly Niedringhaus, **(Exhibit D**) again requesting the Track 1 OV Stamp and raising the issue of being passed over for training on the new AGFM machine, which I eventually did learn. However, once again, there was no follow-up or resolution.

In July 2021, Kelly acknowledged via email with Kevin, his request for the OV Stamp, but nothing materialized. **(Exhibit E),** and also **(Exhibit K).** He eventually filed a grievance regarding the systemic discrimination in promotions, especially concerning minorities in lead roles in which he was denied by both the company and union. **(Exhibit F**) I was Kevin Scott steward and aligned with Kevin Scott's with his case, but the company and union over ruled me and did nothing. So Kevin eventually filed an EEOC complaint **( 560-2021-02539) (Exhibit G)** and the case was later settled through mediation, concerning promotion of black in lead roles.

After the settlement, however, the company started targeting Kevin more with frivolous write up.

In 2018, Plaintiff entered into a Last Chance Agreement ("2018 LCA") as part of a grievance settlement. That agreement, and related grievance terms, expressly provided that:
a. The LCA would expire in 12 months.
b. The agreement could not be used in any future similar or dissimilar case by either the Company or the Union.

The 2018 LCA expired in 2019.

B. Protected Activity

Plaintiff engaged in protected activity, including filing multiple EEOC charges and grievances.

On February 9, 2022, Plaintiff reached a settlement with the EEOC resolving prior discrimination claims.

Plaintiff participated in a subsequent EEOC interview on May 31, 2022 regarding new allegations.

Retaliation Timeline (All Events Occurred After EEOC Settlement)

April 16, 2022 – Plaintiff used 5 hours of FMLA leave for a documented left knee condition, then returned to work. Team Leader Jose Brackins sent Plaintiff home and assessed an attendance point. HR later corrected the point but withheld 3 hours of pay for that day, effectively punishing Plaintiff for taking FMLA leave**. (Exhibit U1-10)**

April 20, 2022 – Brackins issued Plaintiff a "sleeping on the job" write-up, citing a June 22, 2018 verbal warning and other discipline that was explicitly barred from use under the 2018 LCA and grievance settlement. This violated the settlement agreement and demonstrates retaliatory motive.  **(Exhibit Q1-6)**

May 31, 2022 – Plaintiff participated in an EEOC interview concerning ongoing discrimination and retaliation.  **(Exhibit R1-4)**

June 2, 2022 – Plaintiff filed a grievance citing retaliation, hostile work environment, and breach of prior agreements**. (Exhibit Q1-6)**

Mid–Late 2022 – Supervisor Karl Gholston reassigned Plaintiff off his machine and replaced him with another worker after Plaintiff requested the presence of a shop steward. Plaintiff was also consistently denied Sunday overtime opportunities given to similarly situated employees, despite established rotation practices. **(Exhibit S1-2, and T1-2)**

1. Overtime Retaliation **(Exhibit 1 [1-19[ )**

- Article 25 of the collective bargaining agreement requires overtime to be distributed as equally as practicable. Each week supervisors are required to post overtime summaries for transparency.

- My supervisor, Karl (3rd shift), manipulated these summaries, failing to properly record overtime for certain employees while limiting and misrepresenting overtime offered to me. This deprived me of equal overtime opportunities.

- I filed HR complaints and steward grievances regarding this manipulation **(Oct. 2022).** Despite Karl's written admission that an "error" occurred, the conduct continued. The union and HR failed to correct the issue.

- I believe this ongoing denial of overtime is retaliation for my prior EEOC activity.


2. Retaliation in Training and Promotion (OV Stamp)

- Prior to my earlier charge, I filed a grievance (**G21-009)** alleging adverse impact discrimination in promotions, showing that Black employees were underrepresented in lead positions. My grievance was denied, leading to my EEOC filing (560-2021-02539).

- After settlement in March 2022, GKN Aerospace awarded a critical OV Stamp to a white employee, Trip Miller, who had less seniority, less skill, and less departmental experience than me.

- I had repeatedly requested this OV Stamp for years, but after my settlement, management bypassed me and gave it to Miller. This was a retaliatory act intended to penalize me for engaging in protected EEOC activity.

Conclusion

I believe GKN Aerospace violated Title VII of the Civil Rights Act by retaliating against me for filing my prior EEOC charge. The retaliation took two forms: (1) manipulation of overtime assignments to deny me equal opportunities, and (2) denial of training and promotion opportunities (OV Stamp) despite my qualifications and seniority.

D. Pattern and Causation

The retaliatory acts began less than two months after the February 9, 2022 EEOC settlement, establishing temporal proximity.

Defendants' actions constitute a pattern of hostility and targeted discipline designed to create a false negative record and force Plaintiff from employment.

The acts were carried out by multiple supervisors, indicating coordination and institutional retaliation rather than isolated incidents.

IV. CAUSES OF ACTION

Count I – Retaliation in Violation of Title VII (42 U.S.C. §2000e-3(a))

Plaintiff engaged in protected activity by filing EEOC charges, grievances, and opposing discriminatory practices.

Defendants took adverse employment actions against Plaintiff, including unwarranted discipline, reassignment, loss of pay, and denial of overtime.

These actions were causally connected to Plaintiff's protected activity and would dissuade a reasonable employee from engaging in such activity.

Collusion with Employer in Targeting Certain Employees

In a union meeting prior to the transfer, District 837 Vice President Chris Albin stated there was a "list of 16 employees" Boeing was targeting. I believe I was on this list due to my history as a shop steward and vocal critic of both Boeing and the union leadership.  In which I had filed a previous nlrb claim against my employer and my union.  (Case 14-CA-276983 and 14-CB-276984).  **(Exhibit V)**

## Count II – Interference and Retaliation in Violation of the FMLA (29 U.S.C. §2615)

Plaintiff exercised FMLA rights for a documented medical condition.

Defendants interfered with Plaintiff's rights by sending him home mid-shift, assessing discipline, and withholding pay for hours he was willing and able to work.

Defendants retaliated by using the FMLA leave incident as a pretext for further discipline.

## Count III – Breach of Settlement Agreement

The 2018 grievance settlement and LCA contained explicit provisions barring future use of the underlying discipline.

Defendants breached this agreement by citing the barred discipline in the April 20, 2022 write-up.

## Count IV – Violation of NLRA §7 and §8(a)(3)

Plaintiff engaged in protected concerted activity, including requesting a shop steward and filing grievances.

Defendants retaliated by reassigning Plaintiff, denying overtime, and otherwise altering work conditions in a manner that discouraged protected activity.


(H)  Then decided to give Trip Miller, the same white employee with less tenure and less machine training, and promoted  him along with giving him both the OV Track 1 and Track 20 stamps, that Kevin was fighting years to get.  (**Exhibit I 1 and 2**).  **(Exhibit L and Exhibit M.)**  This was a clear act of retaliation, I witness, and It sent a message that supporting or filing complaints about discrimination would result in punishment or lost opportunities. That's why Kevin decided to file another EEOC case (560-2023-00405) concerning retaliation**. (Exhibit J)**  So because of the stress Kevin ultimately took early severance due to the sustained stress. I continued working there and advocating, for fair and equal treatment for blacks.

Jason Beck---- Supporting Testimony and Similar Retaliation

Perfectly Clear Successor Doctrine and Retaliation by Boeing

Following GKN's acquisition by Boeing, the company imposed a new 120-day probationary period—even for employees with 10+ years of experience—while retaining the same management that had previously engaged in discriminatory behavior. Under the Perfectly Clear Successor Doctrine, Boeing became liable for honoring the rights and status of the existing workforce.

Despite this, Boeing selectively terminated or retaliated against Black employees who had supported or filed discrimination complaints under the guise of this probation period. This practice resulted in a disproportionate number of Black employees being let go, including me and at least 14 other long-term Black employees, compared to just one white employee, who was married to a Black man. This constitutes adverse impact discrimination.

In my case, I had no history of performance issues, yet I was closely monitored and scrutinized. In early June 2024, I made a minor, non-damaging error while operating the Loxin. Similar errors had been made by at least three white male employees, none of whom faced discipline. Despite this, I was placed under review and then terminated, despite no equipment damage and no prior issues in my entire employment history.

This occurred shortly after I participated in a Boeing-sponsored employee feedback breakfast, where I directly expressed concerns about racial disparities in promotions and management practices. Following this, I was told by my manager John Cunningham that I was being "watched closely." I was also told by team lead Marcus that Omar Dorado was pressuring leads to fabricate negative documentation against me and other Black workers. Also noted this is the same John Cunningham that was in Tracy Webb (former employee) who stated in her lawsuit claims that team leaders and other managers and supervisors repeatedly harassed her and created a hostile work environment "as a result of her workplace restrictions and ethics complaint." Id. at ¶ 14. This harassment included supervisors and team leaders,

(Case: 4:22-cv-00289-SRC Doc. #: 32 Filed: 08/19/22 Page: 2 of 18) (N 1 and 2)

I respectfully assert that my termination was not based on legitimate performance concerns, but was a direct result of retaliation for my protected activities as a union shop steward and for my support of fellow employees—especially in discrimination-related matters, (Kevin Scott) and that's why I filed my charged of discrimination ( 560-2024-03635**), (Exhibit O).** The very same GKN management team that engaged in these discriminatory practices remained in place after Boeing acquired the facility, and this management carried forward longstanding biases and hostility toward me and others who had raised concerns.

I want to address specific inaccuracies and concerns raised in Boeing's statement:

Alleged Equipment Damage
The claim that I caused "substantial damage" to the Loxin machine is completely false. Prior to my termination, I worked directly with the maintenance department, who confirmed that there was no lasting damage. The incident involved an incorrect work offset that caused an

irregular movement of the machine head, knocking loose an extension. This part required re-welding—no parts needed replacement—and the only delay in returning the machine to production was due to the absence of the only qualified electrician available to recalibrate the unit, who was on vacation. Maintenance confirmed that the Blum laser system involved was not damaged.

I respectfully request that Boeing provide documentation to support its claim of equipment damage, including any invoices for repairs or replacement parts. To my knowledge, no such costs were incurred.

Disparate Discipline
it is important to note that at least three Caucasian employees committed the same or similar setup error involving the Loxin machine, and none of them were disciplined or terminated. This disparity in discipline raises serious concerns of discriminatory treatment, especially considering my clean record and the identical nature of the error.

Retaliatory Motive
As a union shop steward, I advocated for fairness in the workplace and supported employees—including Kevin Scott—in filing grievances and discrimination claims. Kevin eventually filed an EEOC charge regarding racial disparities in leadership opportunities. After that, both he and I experienced escalating hostility from management. While GKN management previously could not terminate me without cause under the union contract, Boeing's imposition of a probationary period after the acquisition gave that same management an opportunity to retaliate without the usual safeguards.

Disparate Impact Post-Acquisition
I also request that the EEOC obtain the EEO-1 data and termination records for the Boeing ACC facility during and after the acquisition. Based on my knowledge, a disproportionate number of minority employees—many with long service records—were terminated under the new probationary policy. This raises potential disparate impact concerns under Title VII.

Given my longstanding employment history, lack of any prior disciplinary record, and the suspicious timing and context of my termination, I respectfully request that this charge be fully investigated. I am confident that a fair review of the facts will show that my termination was not about performance, but retaliation and discriminatory bias by a management team with a well-documented history of animus toward employees who spoke up.

As noted in legal precedent:

"The very concept of retaliation is that the retaliating party takes action against the party retaliated against after, and because of, some action of the latter... It is employed to instill fear in others who might consider making a complaint in the future."

— Fed. Mar. Bd. v. Isbrandtsen Co., 356 U.S. 481, 514 (1958)

## ARGUMENT

### I. Plaintiffs Establish a Prima Facie Case of Race Discrimination and Retaliation Under Title VII and the MHRA

Under Title VII and the MHRA, discrimination based on race and retaliation against employees who oppose such discrimination are prohibited. The elements of a prima facie discrimination claim include membership in a protected class, qualification, adverse employment action, and disparate treatment compared to similarly situated employees outside the class. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Missouri ex rel. Nixon v. Am. Tobacco Co., 34 S.W.3d 122, 129 (Mo. banc 2000).

Plaintiffs are Black employees who were qualified and experienced but were denied the Track 1 OV and Track 20 stamps, essential for promotion and pay increases, while less senior white employees received these benefits. Following protected complaints and participation in EEOC processes, Plaintiffs faced retaliation, including unwarranted probation and termination. This conduct satisfies the elements for retaliation claims under Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), and MHRA § 213.070.2.

### II. Denial of Training, Certification, and Promotion Constitutes Adverse Employment Actions

Denial of access to training and certification opportunities that impact pay and career advancement is recognized as adverse employment action. Courts have held that such denials may constitute discrimination when based on race or used as retaliation. See Jackson v. Veterans Administration, 22 F.3d 277, 280 (7th Cir. 1994).

Here, the repeated denial of stamps and training, despite Plaintiffs completing all required work and qualifications, is direct evidence of disparate treatment. The fact that a white employee with less seniority and fewer qualifications obtained these certifications further supports Plaintiffs' claims.

### III. Defendant's Proffered Reasons Are Pretextual and Retaliation Is Evident

Defendants have offered no legitimate or consistent explanations for these disparities. The timing of adverse actions closely following Plaintiffs' complaints and participation in protected activities strongly supports an inference of pretext and retaliatory motive. The documented efforts to fabricate negative performance reviews and close monitoring underscore a retaliatory scheme. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981).

IV. Adverse Impact Discrimination through Boeing's 120-Day Probationary Period

The imposition of a new 120-day probation for longstanding employees after Boeing's acquisition—disproportionately affecting Black employees—constitutes adverse impact discrimination. Statistical evidence showing a disproportionate number of Black employees terminated compared to white employees supports this claim under Title VII's disparate impact theory. See Griggs v. Duke Power Co., 401 U.S. 424 (1971).

V. Boeing's Liability under the Perfectly Clear Successor Doctrine

Under the Perfectly Clear Successor Doctrine, Boeing, as the successor employer, assumed liability for existing labor and employment obligations, including the duty to refrain from discriminatory practices. Retaining the same management that engaged in past discrimination and continuing retaliatory conduct makes Boeing liable for those violations. See Perfectly Clear, Inc. v. Campbell, 39 F.3d 495, 499 (8th Cir. 1994).

Summary of Legal Claims

1. Race-Based Discrimination:

   Consistent patterns of denying promotions, stamps, and leadership opportunities to Black employees with more tenure and qualifications.

2. Retaliation under MHRA and Title VII:

   Terminations and negative treatment following protected activities, including HR complaints and EEOC filings.

3. Adverse Impact Discrimination:

The implementation of Boeing's "probationary period" disproportionately affected Black employees who had long-standing service records. Of those terminated, the overwhelming majority were Black.

4. Violation of Successor Employer Liability:

Under the Perfectly Clear Successor Doctrine, Boeing retained GKN management and was aware of existing issues, yet allowed retaliatory practices to continue.

II. Legal Issues

Title VII Retaliation – Whether the employer's denial of promotions, job stamps, and training opportunities, as well as increased hostility, was in retaliation for filing HR complaints, grievances, and an EEOC charge, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e3(a).

Hostile Work Environment – Whether the pattern of increased scrutiny and hostility after engaging in protected activity constitutes unlawful retaliation under Title VII.

Successorship Obligations under the National Labor Relations Act (NLRA) – Whether the successor employer was a "perfectly clear successor" obligated to maintain existing terms and conditions of employment prior to bargaining.

III. Cited Case Law

A. Title VII Retaliation Standard

University of Texas Southwestern Medical Center v. Nassar, 570 U.S. 338 (2013)
The U.S. Supreme Court held that a plaintiff asserting a retaliation claim under Title VII must establish "butfor" causation—that is, the adverse employment action would not have occurred in the absence of the retaliatory motive.
Citation: 570 U.S. 338, 362 (2013).

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)
The Court expanded the definition of adverse employment actions in retaliation cases, holding that any action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination" qualifies, even if it does not affect the terms and conditions of employment.
Citation: 548 U.S. 53, 68 (2006).

B. Successor Employer Obligations

NLRB v. Burns Int'l Sec. Servs., Inc., 406 U.S. 272 (1972)
A successor employer that retains a majority of the predecessor's employees in the same bargaining unit must recognize and bargain with the incumbent union, though it may generally set initial terms unless the "perfectly clear successor" exception applies. Citation: 406 U.S. 272, 281–295 (1972).

Perfectly Clear Successor Doctrine – Originating from Spruce Up Corp., 209 NLRB 194 (1974), enforced, 529 F.2d 516 (4th Cir. 1975)
If a successor makes it "perfectly clear" it will retain all or substantially all predecessor employees without announcing changes in employment terms, it must maintain existing terms until bargaining occurs.

Ridgewood Health Care Ctr., Inc., 367 NLRB No. 110 (2019)
The NLRB held that discriminatory refusal to hire some predecessor employees does not automatically trigger perfectly clear successor status; instead, the inquiry focuses on whether the employer misled employees or failed to announce changes before offering employment.

First Student, Inc. v. NLRB, 935 F.3d 604 (D.C. Cir. 2019)
The D.C. Circuit upheld the NLRB's finding that an employer who announced it would maintain existing wages and hours before hiring predecessor employees was a perfectly clear successor and thus required to bargain before implementing changes.


IV. Application to Facts

Protected Activity: Multiple HR complaints, union grievances, and an EEOC charge are all protected activities under 42 U.S.C. § 2000e3(a).

Adverse Actions: Denial of training and stamps, promotion of a less senior white employee, and increased hostility meet the Burlington Northern deterrence standard.

Causation: The close timing between complaints and adverse actions supports an inference of "butfor" causation under Nassar.

Successorship: If GKN's successor retained substantially all employees, maintained similar operations, and failed to announce changes before hiring, it may qualify as a perfectly clear successor under Burns and First Student, triggering an obligation to bargain before altering employment terms.


1. Relevance under Federal Rules of Evidence

Rule 401 – Evidence is relevant if it makes a fact more or less probable and is of consequence to the action.

Rule 404(b) – While "character evidence" to show a person acted in conformity is generally barred, in employment discrimination cases, testimony about similar acts can be admitted to show motive, intent, or discriminatory pattern.

Additional Factual Allegations: Boeing–GKN Acquisition and Successor Liability

Evidence Appendix: Boeing–GKN Agreements and Facility Continuity

This appendix contains key excerpts from the January 12, 2024 filing by GKN Aerospace St. Louis LLC in St. Louis County case no. 22SL-CC05336 (later removed to E.D. Mo. case no. 4:24-cv-00219). These passages describe the contractual framework, operational continuity, and integration between Boeing and GKN immediately prior to Boeing's April 2024 acquisition of the Hazelwood Advanced Composite Center ("ACC"). Each fact supports Plaintiffs' successor-liability theory in Case No. 4:25-cv-01154-JSD.

Key Excerpts from January 12, 2024 Filing

Strategic Agreements for F-15/F/A-18 parts:
GKN describes the work as performed 'pursuant to a suite of agreements... that have a five-year term (the "Strategic Agreements").' (Jan. 12, 2024 Filing, at 2)

Boeing pressure to take over Hazelwood facility:
Boeing was trying 'to browbeat GKN St. Louis into a deal to sell the Hazelwood facility... so that Boeing can operate it after its existing, five-year contracts... are at an end.' (Id. at 3)

2001 Wastewater Services Agreement:
A 2001 shared services agreement ('Wastewater Services Agreement')... obligates Boeing to provide wastewater treatment services... essential to GKN St. Louis's manufacturing processes.' (Id. at 3)

Original parties and facility history:
The original parties... were McDonnell Douglas... and GKN Aerospace North America, Inc... McDonnell Douglas used to own and operate the Hazelwood... facility... [sold] to GKN in November 2000... Boeing continu[ed] to maintain an adjacent facility with continuing shared common services... including... wastewater services.' (Id. at 3)

Boeing threat to terminate wastewater services:
Boeing 'has threatened to... terminate the Wastewater Services Agreement and thereby frustrate GKN St. Louis's ability to perform the very contracts which Boeing... says are essential.' (Id. at 4)

Adjacency and dependency:
Boeing's wastewater treatment facility is adjacent to the Hazelwood Facility. If Boeing is permitted to terminate... [it] will create... significant... disruption of Boeing's supply chain.' (Id. at 4)

Life-of-Program Agreement (LOP) replaced by Strategic Agreements:
Before the Strategic Agreements, terms 'were reflected in a 2003 Life of Program Agreement ("LOP Agreement")' committing Boeing to source F-15/F/A-18 parts from GKN 'for as long as those aircraft programs existed.' (Id. at 5)

Legal Relevance to Successor Liability

These facts establish substantial continuity of operations, workforce, and management between GKN and Boeing, as well as Boeing's integration with and control over essential services to the Hazelwood facility prior to acquisition. They also confirm Boeing's actual or constructive notice of ongoing operational and contractual disputes at the time of purchase. Under EEOC v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086 (6th Cir. 1974), Prince v. Kids Ark Learning Ctr., 622 F.3d 992 (8th Cir. 2010), and Golden State Bottling Co. v. NLRB, 414 U.S. 168 (1973), these facts support imposing Title VII/MHRA successor liability on Boeing for the continuation of discriminatory and retaliatory practices initiated under GKN management.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor on all counts, award compensatory and punitive damages, grant injunctive relief as requested herein, and award such other and further relief as the Court deems just and proper.

Facility-Specific Workforce Analysis and Disparate Impact Liability

22. Because Boeing's acquisition of the ACC was structured as a standalone asset purchase, the relevant "employer" for Title VII, MHRA, and NLRA purposes is Boeing's ACC operation, not Boeing's worldwide or corporate-wide workforce.

23. In employment discrimination and disparate impact cases, courts have repeatedly recognized that statistical comparisons must be made to the relevant labor pool actually subject to the challenged decision-making — here, the employees of the Hazelwood ACC facility — rather than an unrelated national or global workforce. See Hazelwood School Dist. v. United States, 433 U.S. 299, 308 (1977) ("Proper statistical comparison is with the qualified individuals in the relevant labor market."); Teamsters v. United States, 431 U.S. 324, 339 n.20 (1977) ("The proper comparison is between the racial composition of the at-issue jobs and the racial composition of the qualified population in the relevant labor market.").

24. Plaintiffs allege that during and immediately following Boeing's April 2024 acquisition of the ACC facility, Black employees at the ACC were terminated at a grossly disproportionate rate compared to similarly situated white employees, many of whom had

less tenure or weaker performance records.

25. Based on information and belief, EEO-1 reports for the ACC facility — which Boeing is required to file under federal law — will show:

  a. The racial composition of the ACC workforce before the acquisition;

  b. The number and race of employees terminated during the 120-day "probationary period" imposed by Boeing; and

  c. That a disproportionate percentage of these terminations involved Black employees, even when controlling for tenure, performance, and position.

26. Because the ACC was operated as a standalone facility, and Boeing retained GKN's existing management team, Boeing cannot dilute this data by including its corporate-wide employee population in statistical analysis. Allowing Boeing to do so would artificially mask the disparate impact at the ACC, contravening the purpose of Title VII's disparate impact protections as set forth in Griggs v. Duke Power Co., 401 U.S. 424, 430–31 (1971).

27. Accordingly, Plaintiffs seek an order compelling Boeing to produce facility-specific EEO-1 reports, termination logs, and demographic data for the Hazelwood ACC facility for the 12 months before and after the April 2024 acquisition. This information will establish the precise scope of the disparate impact and provide further evidence of discriminatory motive and pretext in Boeing's termination decisions.

Boeing's Omission of the GKN Acquisition from SEC Filings Confirms a Standalone Asset Purchase — Yet Does Not Shield it from Successor Liability

15. On or about April 26, 2024, The Boeing Company acquired GKN Aerospace's Advanced Composite Center ("ACC") facility in Hazelwood, Missouri. Publicly available records, including Boeing's press statements and media reports, confirm that Boeing assumed immediate operational control of the ACC, retained substantially all of the workforce, maintained the same management structure, and continued the same core manufacturing functions without interruption.

16. Despite the scope of this acquisition, Boeing made no disclosure of the transaction in its filings with the United States Securities and Exchange Commission ("SEC"), including its Form 8-K current reports, quarterly reports on Form 10-Q, or annual report on Form 10-K. This omission confirms that Boeing treated the acquisition as a standalone asset purchase of a single facility, rather than a merger or acquisition of GKN Aerospace as a corporate entity.

17. Boeing's omission from SEC filings is consistent with the legal and accounting treatment of a non-material, private asset transaction — one which did not trigger the financial reporting obligations associated with corporate mergers or acquisitions of significant business segments. See 17 C.F.R. § 229.2-01 et seq. (Regulation S-K, Materiality Standard).

18. The fact that Boeing purchased only the ACC facility, rather than the entire GKN corporate enterprise, does not insulate Boeing from liability for pending employment-related claims against that facility's operations. Under successor liability principles recognized in both Title VII and Missouri Human Rights Act (MHRA) jurisprudence, an acquiring company may be held liable for its predecessor's unlawful employment practices where there is (1) substantial continuity in the business operations; (2) retention of the same workforce and supervisory personnel; and (3) notice of the claim or pending litigation prior to the acquisition. See EEOC v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086, 1094 (6th Cir. 1974); Prince v. Kids Ark Learning Ctr., 622 F.3d 992, 994 (8th Cir. 2010).

19. (1-12) ARTICLES OF AGREEMENT
Between
THE BOEING COMPANY
and
DISTRICT LODGE NO. 837, INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE WORKERS, AFL-CIO
And INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE WORKERS, AFL-CIO

**Page 137 – Article V, Section 1** – Shift Definitions

> Advanced Composite Center (ACC) – For purposes of shift scheduling and assignment, the Advanced Composite Center shall be recognized as a separate work location. Employees assigned to the ACC will be scheduled according to the operational needs of that facility. Any reference to plant-wide shift assignments in this Agreement shall not override the specific provisions applicable to the ACC.

**Page 246 – Letter of Understanding #16** – Advanced Composite Center – Saint Louis, Missouri

> This Letter of Understanding is entered into between The Boeing Company and District Lodge No. 837, International Association of Machinists and Aerospace Workers, AFL-CIO, regarding employees assigned to the Advanced Composite Center (ACC) in Saint Louis, Missouri.

1. This Letter applies only to employees assigned to the ACC.

2. The ACC will maintain its own staffing arrangements, overtime distribution lists, and shift assignments independent of other Boeing Saint Louis operations.

3. Any operational or staffing changes affecting the ACC will be discussed separately between the Company and Union, apart from general plant negotiations.

4. The intent of this Letter is to recognize the ACC as a distinct operational unit within Boeing's Saint Louis facilities for purposes of work rules, staffing, and scheduling.

5. This shows that the Advanced Composite Center (ACC) in Saint Louis, Missouri, is a distinct operational unit within Boeing, as explicitly recognized in the labor agreement (Article V, Section 1) and Letter of Understanding #16. These provisions confirm that ACC employees operate under separate staffing arrangements, shift assignments, and overtime rules, independent of other Boeing St. Louis operations. Operational or staffing changes affecting the ACC are negotiated separately with the Union, underscoring its status as a standalone facility.

6. Despite this clear contractual distinction, Boeing's 2023 EEO-1 report aggregated the ACC workforce with the broader St. Louis facility, rather than reporting it independently. This misrepresentation obscures the ACC's workforce demographics, including racial composition, promotions, and overtime distribution, and undermines the ability to detect potential disparate treatment or discrimination specific to the ACC.

7. Under the "perfectly clear successor" principle and EEOC reporting rules (see Boeing Co. v. EEOC, 577 F.3d 1044; First Student, Inc. v. NLRB, 366 NLRB No. 13), the ACC qualifies as a standalone entity whose workforce should be reported independently

8. Boeing's failure to do so constitutes a reporting discrepancy that directly impacts the analysis of discriminatory practices at the ACC.

9. Boeing Co. v. EEOC, 577 F.3d 1044 (9th Cir. 2009):

10. The Ninth Circuit upheld the EEOC's authority to enforce EEO-1 reporting requirements, reinforcing the importance of accurate demographic reporting by employers.

11. Center for Investigative Reporting v. U.S. Department of Labor, 3:22-cv-07182-WHA (N.D. Cal. Dec. 22, 2023):

12. The court ruled that EEO-1 reports are not protected as confidential commercial information under FOIA, emphasizing the need for transparency in workforce demographic data.

19. Here, all three factors are present:

a. Continuity of operations — Boeing continued identical production of F/A-18 and F-15 composite parts at the ACC, using the same production lines, equipment, and manufacturing processes.

b. Retention of workforce and management — Boeing retained nearly all of GKN's employees at the ACC, including the exact management team responsible for the discriminatory and retaliatory conduct alleged herein.

c. Notice of claims — At the time of acquisition, GKN and Boeing were on notice of Plaintiffs' pending EEOC charges, Missouri Commission on Human Rights complaints, and related litigation arising from the ACC's employment practices.

20. The Perfectly Clear Successor Doctrine further supports Boeing's liability. Under this doctrine, where a successor employer makes it clear it intends to retain the predecessor's workforce without announcing changes to employment terms, it must honor existing rights and is bound by the predecessor's obligations, including pending employment claims. See Spruce Up Corp., 209 NLRB 194 (1974), enforced, 529 F.2d 516 (4th Cir. 1975); First Student, Inc. v. NLRB, 935 F.3d 604, 607 (D.C. Cir. 2019).

21. Therefore, even if Boeing structured the acquisition as a limited, non-material asset purchase of the ACC facility, it cannot avoid liability for GKN's pending employment discrimination and retaliation claims. The law imposes successor liability precisely to prevent companies from escaping accountability by acquiring operations in form only, while continuing the same workforce, management, and unlawful practices in substance.

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Award compensatory damages for lost wages, emotional distress, and damage to reputation;

b. Award punitive damages where authorized by law;

c. Order reinstatement and/or front pay where applicable;

d. Grant injunctive relief requiring Boeing to reform its promotion, training, and disciplinary procedures;

e. Award attorneys' fees and costs; and

f. Grant such other relief as the Court deems just and proper.

VI. PRAYER FOR RELIEF

Count V – Violation of NLRA §7 and §8(a)(3)

Count IV – Breach of Settlement Agreement

Count III – Interference and Retaliation in Violation of the FMLA

Count II – Retaliation in Violation of Title VII and the MHRA

Count I – Race Discrimination in Violation of Title VII and the MHRA

V. CAUSES OF ACTION

13. Key excerpts from the January 12, 2024 filing in St. Louis County case no. 22SL-CC05336 (later removed to E.D. Mo. case no. 4:24-cv-00219) establish Boeing's integration and continuity with GKN operations prior to acquisition:

 a. Strategic Agreements for F-15/F/A-18 parts with a five-year term.

 b. Boeing sought to acquire the Hazelwood facility to continue operations post-contract.

 c. A 2001 Wastewater Services Agreement linked Boeing's and GKN's operations, with Boeing threatening termination to pressure the sale.

 d. Facility adjacency and dependency for essential services.

 e. Replacement of a Life-of-Program Agreement with Strategic Agreements.

14. These facts demonstrate substantial continuity of operations, workforce, and management, supporting successor liability under Title VII, MHRA, and NLRA principles.

IV. ADDITIONAL FACTUAL ALLEGATIONS: BOEING–GKN ACQUISITION

7. Plaintiffs incorporate by reference all allegations contained in their original Complaint.

8. The Boeing Company acquired the GKN Aerospace Advanced Composite Center in Hazelwood, Missouri in or around April 2024.

9. At the time of the acquisition, Boeing retained substantially all employees, maintained the same management, and continued the same operations as GKN Aerospace.

10. The same management team that engaged in discriminatory practices under GKN remained in place after the acquisition and continued those practices under Boeing.

11. At the time of acquisition, Boeing had actual and constructive notice of ongoing EEOC charges, discrimination complaints, and grievances filed by Plaintiffs and others.

12. Boeing imposed a new 120-day probationary period on existing employees, which was disproportionately applied to and used to terminate Black employees.

III. FACTUAL ALLEGATIONS

3. Plaintiff Kevin Scott is an African American individual and former employee of GKN Aerospace in Hazelwood, Missouri.

4. Plaintiff Jason Beck is an African American individual and former employee of GKN Aerospace and Boeing at the Hazelwood ACC facility.

5. Plaintiff Deborah Davis is an African American individual and former employee of GKN Aerospace and Boeing at the Hazelwood ACC facility.

6. Defendant The Boeing Company is a Delaware corporation with its principal place of business in Chicago, Illinois, and conducts substantial operations in Missouri.

II. PARTIES

1. This Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over Missouri state law claims under 28 U.S.C. § 1367.

2. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to these claims occurred in this District.

I. JURISDICTION AND VENUE

Plaintiffs, Amended Complaint against The Boeing Company, incorporating additional factual allegations concerning Boeing's acquisition of GKN Aerospace's Advanced Composite Center and its successor liability for the continuation of discriminatory and retaliatory practices initiated under GKN management.

FIRST AMENDED COMPLAINT

Kevin Scott, Jason Beck,
Plaintiffs,

v.

The Boeing Company,
Defendant.

Case No. 4:25-cv-01154-JSD

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RECEIVED

AUG 2 0 2025

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

**Scott, Kevin**

| | |
|---|---|
| **From:** | Scott, Kevin |
| **Sent:** | Sunday, January 23, 2022 11:43 PM |
| **To:** | Gholston, Karl |
| **Subject:** | RE: My OJT for my track 20 and track 1 OV stamps |

Ive been hearing that for over 2 years of empty promises and lies. I told you before over and over again im ready anytime all I ever get from you is excuses to continue to promote discriminatory behavior when it comes to blacks training and getting promoted

**From:** Gholston, Karl
**Sent:** Friday, January 21, 2022 1:38 AM
**To:** Scott, Kevin <Kevin.Scott@gknads.com>
**Cc:** Niedringhaus, Kelly <Kelly.Niedringhaus@gknads.com>
**Subject:** RE: My OJT for my track 20 and track 1 OV stamps

Will work with 1st shift to accommodate .When are you available to go on first to get it complete?

**From:** Scott, Kevin
**Sent:** Friday, January 21, 2022 12:21 AM
**To:** Gholston, Karl <Karl.Gholston@gknads.com>
**Cc:** Niedringhaus, Kelly <Kelly.Niedringhaus@gknads.com>
**Subject:** My OJT for my track 20 and track 1 OV stamps

I writing because I'm still waiting on my OJT for my track 1 and track 20 OV stamps that I was told would happen, but have yet happen??????

1

**Scott, Kevin**

| | |
|---|---|
| **From:** | Scott, Kevin |
| **Sent:** | Friday, June 14, 2019 3:48 AM |
| **To:** | Gholston, Karl |
| **Subject:** | FW: CS and OV stamps for Kevin Scott |
| **Attachments:** | RE: OV certification; Employees ok to request CS stamps for. |

**From:** Corey, Mark
**Sent:** Thursday, April 18, 2019 1:31 AM
**To:** Sieckmann, Linda <Linda.Sieckmann@USA.GKNAEROSPACE.COM>
**Subject:** CS and OV stamps for Kevin Scott

Linda
Please order a CS and an OV stamp for Kevin Scott, 600747.
Track 1

Mark E Corey
Team Leader Composites
314-580-7831

1

## Scott, Kevin

| | |
|---|---|
| **Subject:** | Kevin Scott OV Stamp |
| **Location:** | CR_OPS (Seat 20) |
| | |
| **Start:** | Wed 5/27/2020 7:30 AM |
| **End:** | Wed 5/27/2020 8:00 AM |
| **Show Time As:** | Tentative |
| | |
| **Recurrence:** | (none) |
| | |
| **Meeting Status:** | Not yet responded |
| | |
| **Organizer:** | Hemmer, Susan |
| **Required Attendees:** | Gholston, Karl; Laffleur, Tim; Tuohy, Matthew; Dorado, Omar; Scott, Kevin |

Let's all convene together (leaders and employee) to sort out Kevin's OV stamp please. I appreciate your participation.

Kevin Scott

600747

5/11/2021

I'm filing this HR complaint, because I have been denied the opportunity to acquire a tack 1 OV stamp. I have the emails proving my case. It started when my then team leader Mark Corey had me go through all of my testing and OJT to acquire my stamp and still I was denied. The email went to Don Dubois, (training) Shahrukh, Muhammad, Linda Sieckmann (quality), Ben Roth (VSM), Brigitte Kellar (Stamp Control) etc.... and still no response. So on about 5/27/2020 The HR manager at the time Sue Hemmer called for a meeting and present at that meeting was Matthew Tuohy, Karl Gholston, Sue Hemmer and myself. I was ask why I wanted an OV stamp and I told Matthew Tuohy that being on the cutters we from time to time have FAI that come through my station, and in order to acquire a FAI track 20 stamp a person would need to have their OV track 1 first. So after the meeting I was under the impression that I would eventually get my OV track 1 stamp only to continue to wait. Now recently I look on the 3C Log charts and also the team competency board in the AGFM, and now I see need a track 20 operator!!!! So now I'm asking HR to look on the board and also the chart as well to see how Matthew Tuohy have denied my rights to be trained under Section B in the Employee Handbook under the equal employment opportunity policy. He's the VSM over my department, so he's responsible. I have emails that was provided by Mark Corey who was my team leader at the time proving to me that he was trying and that my denial was coming from upper management. So why am I being denied????? So I do know that Matthew Tuohy is now responsible, because he's my VSM in my department.

Attach are the emails proving my case.

*received*
*5/11/21*
*Kelly Nudinghaus*

FW: Document received 7.6.21

From:  Scott, Kevin (kevin.scott2@usa.gknaerospace.com)

To:     kevinscott1977@yahoo.com

Date:  Friday, July 23, 2021 at 12:14 AM CDT

**From:** Niedringhaus, Kelly <Kelly.Niedringhaus@usa.gknaerospace.com>
**Sent:** Wednesday, July 21, 2021 3:51 PM
**To:** Scott, Kevin <Kevin.Scott2@usa.gknaerospace.com>
**Subject:** RE: Document received 7.6.21

Kevin,

I wanted you to know my Boss Paul and I have a meeting with quality on their processes tomorrow 7/22/21.
I plan to address the need for stamps on 3rd shift.

I will follow up once I have more information ,

Thank you,
Kelly

**From:** Niedringhaus, Kelly
**Sent:** Thursday, July 8, 2021 2:38 PM
**To:** Scott, Kevin <Kevin.Scott2@usa.gknaerospace.com>
**Subject:** Document received 7.6.21

Kevin,

After reviewing your document, one of the few things that I hear is that you are interested in obtaining your OV
stamp.
I do not make decisions on the departmental need for quality stamps, I have reached out to your team leader to get
more insight on the need in your department and shift.

I will follow up once I know more.

The other concerns listed on the above dated document will be reviewed and coinsidered as well.

Thank you,
kelly

**Kelly Niedringhaus | Labor Relations Manager | GKN Aerospace St. Louis**
142 J.S. McDonnell Blvd | Hazelwood | Missouri | 63042 | USA
Cell: 314 619 9683 | Office: 314 264 4147 | Fax: 314 264 3036




# International Association of Machinists & Aerospace Workers, AFL-CIO

| President / Directing Business Representative Tom Boelling | **Aerospace District Lodge #837** | Secretary - Treasurer DeWitt Darity |
|---|---|---|
| Assistant Directing Business Representative Chris Albin | **212 Utz Lane**<br>**Hazelwood, MO 63042**<br>**Main: (314) 731-0603**<br>**Fax: (314) 731-1435** | Business Representative John Fitts<br><br>Business Rep. / Organizer Dan Forbes |

September 15, 2021

<u>Sent VIA Certified Mail</u>
7020 1810 0001 1005 7306

Mr. Kevin Scott
27 Ranchview Drive
Florissant, MO 63033

**RE:  Grievance - G21-009**
     **Scott - Discrimination**

Dear Sir/Brother Scott,

On August 23, 2021, at 6:00am, we met with GKN in a "third step" hearing for this case.

On August 31, 2021, the Company sent a "Settlement Letter" denying the grievance.  After a full investigation and discussion of the facts and circumstances, unfortunately, the Union cannot pursue your case further.

This grievance is hereby withdrawn and now closed.

Fraternally,

Chris Albin
**Assistant Directing**
**Business Representative**


cc:  Bach (PC)
     Beck (SS)

SEIU #1/ dp

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 560-2021-02539 |

| MISSOURI COMMISSION ON HUMAN RIGHTS | and EEOC |
|---|---|
| *State or local Agency, if any* | |

**four-fifths rule states that if the selection rate for a certain group is less than 80% of that group with the highest selection rate, then there is adverse impact on that group.**

**I would to become a Lead Person and want my work credentials to reflect that I have the necessary qualifications/experience however I am being denied the training and tools that would allow me to accomplish this. For example, since 2019 and continuing to present date, I have requested from management and been denied a track 1 stamp, despite the fact that I have proof (emails) showing that I have completed all of my training obligations. In addition, I have also requested and been denied a track 20 stamp for no justifiable reason while similarly situated white counterparts have received same.**

**The current seniority report as of 6/3/21 shows that the company has a total of 52 Lead Personnel and of that number approximately six (6) are black and forty -six (46) are white which is a disproportionate amount. This shows that the companys facially neutral promotion policy for Lead Personnel has an adverse impact on blacks. Moreover, I take this position because of the language for the Lead Personnel in the union contract, Article 5 (Wages Section), which shows that the selection process for Lead Personnel is in violation of state and federal law. Moreover, in 2019 I filed a complaint with HR concerning the Lead Personnel promotion policy and was told that technically, the employers handbook (employer policies) doesnt cover employees whom are represented by labor unions.**

**The companys policy, HRD-STL-032-which states that the Team Leader selects a Lead Person candidate violates state and federal laws because of the adverse impact of the discriminatory analysis that comes from the selection process. The root cause analysis of this issue starts with the leadership structure at the company. In particular, if there is not enough of a diverse leadership structure at the company then its going to be hard for diversity to be emphasized, so without a diverse structure at the top, it then allows a system of inequity to exist. If there is a system of inequity, then it becomes impossible for equality to happen. This is the current situation at GKN regarding the Lead Person promotion system. It starts with upper management being more diverse, then as a result, it will be shown/reflected when it comes to promotion or hiring at the VSM or Group Leader level which only has two (2) minorities, one (1) Hispanic and one (1) female, no blacks. Once the Group Leader (VSM) becomes more diversified then they can place emphasis on the Team Leaders to have more diversity and inclusion when it comes to promoting Lead Personnel. The reason that I emphasize diversity at the upper management level is because even though I have a black Team Leader, (Karl), I don't believe that the discrepancy in the disproportionate amount of blacks v. whites in Team Lead and/or Lead Personnel positions has changed. During the entire time that I have been employed at GKN, I have not seen Karl recommend any black person for a Lead position, therefore, in my opinion, the power of diversity doesnt really come from the Team Leader level but it must really be emphasized at the VSM or higher level. I believe that the numbers would change if there were a diverse group of CBUs that could have a voice in the recommendation process, along with having**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Kevin Scott on 09-30-2021 03:20 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

# Steward Complaint Log
## IAMAW District 837

Grievant's Name: Kevin Scott   Clock Number: 000747   Classification: Bonding Mech

Department: 1087 B   Shift: 3   Building: 2   Dept. Phone: _____   Local Lodge: 387

Address: 1471 Stoneburg Ct   City: St. Louis   State: Mo   Zip: 63033

Home Phone: N/A   Rate of Pay: N/A   Seniority Date: 7-24-17

Shop Steward: _____   Department Phone: _____   Cell Number 314-709-5146

Violation: Retaliation   Article: 11   Section: 2

Date of Occurrence: 10-9-22 / 10-8-22   Date Steward Notified: 10-10-22   Date Filed: 10-10-22

### Complaint

I writing this in response of feeling Like I'm being retaliated against, because of my previous filings against the company when it comes to overtime. My previous HR complaint on 1/27/22 (Overtime) along with other HR complaints, shows a consistent pattern of Retaliatory practices here at GRN. I was not allowed to work on (10/9/22), but yet another person from a different shift was allowed to work on my shift. The same person was allowed to work on Sat as well.
(10/8/22)

### Foreman's Decision

Foreman's Name: Karl Chholston   Dept. Phone Number: 314 503 5572   Pager Number: _____   Date: 10/12/22

This was not retaliation, it was a scheduling error/miscommunication with Lead employee. Employee started early and worked 1 hour on 3shift when employee of that shift were not asked to work.

Settlement? This will be managed more closely moving forward to not happen again

### Stewards Remarks

GKN STAMP CENTER



I 1 of 2

## GK20 - FAI (Qualifications Limited to Composite Structures)

FAI track qualifications work in conjunction with the employee's qualification track(s).

| EMPLOYEE # | EMPLOYEE | OV STAMP # |
|---|---|---|
| 204366 | McEwen, Frank | 229 |
| 209169 | Williams, Dave | 574 |
| 209992 | Graf, Robert | 138 |
| 232979 | Dupske, Frank | 156 |
| 242442 | Eller, Greg | 618 |
| 247797 | Doebber, Chris | 247 |
| 248032 | Wimberly, William | 638 |
| 262562 | Foster, David | 780 |
| 273352 | Camren, Tim | 492 |
| 273393 | Hammock, Daniel | 310 |
| 285386 | Slater, Andrew | 342 |
| 600072 | Dallas, John | 490 |
| 600080 | Wilson, Ross | 685 |
| 600101 | Smith, Tim | 388 |
| 600126 | Ray, Steven | 061 |
| 600171 | Steele, Kathy | 119 |
| 600193 | Connors, Nicholas | 777 |
| 600226 | Tripp, Jason | 179 |
| 600244 | Stegall, Debora | 663 |
| 600261 | Cowan, Benjamin | 451 |
| 600281 | Schulze, Arthur | 547 |
| 600300 | Smith, Scott | 781 |
| 600340 | Randle, Jeff | 241 |
| 600369 | Stevenson, David | 264 |
| 600378 | Patton, Shanika | 581 |
| 600387 | Tinnon, John | 253 |

GKN STAMP CENTER

Page 2 of 2

| 600416 | Able, Ronald | 320 |
| 600423 | Clancy, William | 318 |
| 600446 | Pegue, Matthew | 280 |
| 600480 | Duchscherer, Bill | 324 |
| 600592 | Lowers, Lee | 742 |
| 600727 | Coonce, David | 614 |
| 600751 | Miller, Trip | 802 |
| 600758 | Gilbert, Marsha | 158 |
| 600817 | Swatek, Dave | 714 |
| 601057 | Artem, Moore | 774 |

Case: 4:25-cv-01154-JSD   Doc. #: 8-1   Filed: 08/20/25   Page: 42 of 100 PageID #: 161

## Re: kevin scott eeoc charge against gkn #560-2023-00405

From:  Kevin Scott (kevinscott1977@yahoo.com)

To:    jason.wilson@eeoc.gov

Date:  Friday, June 16, 2023 at 04:33 PM CDT

Thank you, my Wilson, I had one more follow up question, if they (gkn) does not send a response letter or try to stall does the investigation continue, how's does that work?

On Tuesday, June 13, 2023 at 12:44:36 PM CDT, JASON D. WILSON <jason.wilson@eeoc.gov> wrote:

Good afternoon Mr. Scott,

Currently we are waiting on the respondent's position statement to come in. Expected to arrive on 06/15/23. Once it arrives, we will send it to you for the opportunity to refute the information therein the position statement. You will have thirty days to provide additional evidence to support your claim and to rebut the information they have provided in their response.

Respectfully,

Jason D Wilson

Jason D. Wilson (Federal Investigator)

U.S. Equal Employment Opportunity Commission (EEOC) | St. Louis District

Robert A. Young (Federal Building)

1222 Spruce, Rm: 8.100

St. Louis, MO 63103

Office: (314) 798-1955

E-mail: jason.wilson@eeoc.gov

To check the status of your EEOC charge, or begin filing online click **_HERE_**



## Scott, Kevin

| | |
|---|---|
| **From:** | Scott, Kevin |
| **Sent:** | Friday, January 21, 2022 12:20 AM |
| **To:** | Gholston, Karl |
| **Cc:** | Niedringhaus, Kelly |
| **Subject:** | My OJT for my track 20 and track 1 OV stamps |

I writing because I'm still waiting on my OJT for my track 1 and track 20 OV stamps that I was told would happen, but have yet happen??????

1

the end of the forty (40) working days or be returned to his former classification. Any portion of a day worked shall be counted as a full day. In case of infrequent assignments the days worked will accumulate. Should an employee not merit the higher classification, he will be returned to his previous work.

B. If an employee accepts a transfer to another equally rated job classification, he may decide at any time before he has worked forty (40) working days in the new classification to return to his former classification. In case of unsatisfactory performance by the employee, the Company reserves the right to return the employee to his former classification at any time before he has worked forty (40) working days in his new classification. No provision of this section shall be used contrary to section 4C above.

**Section 6**
Anyone required to act as a lead person shall be notified in writing by his Foreman after one week's trial as such and will receive thereafter **one dollar and fifty cents ($1.50) per hour above the Wage scale A or Wage scale B that they are in**, and will be subject to automatic increases otherwise provided herein, and will continue as lead person until notified in writing that he is no longer to act as such.

**Section 6A**
**Employees certified for operator verification, inspection, quality designee (QD) and/or first responder will receive a thirty-five cents ($0.35) per hour additive above their normal rate of pay.**

**Section 7**
A. Anyone appointed lead person shall be given a list by his Foreman of those **employees** assigned to **them** and such list shall be kept up to date when employees are added to or taken away from such lead person. A copy of this list shall be given to the Shop Steward. Not more than twenty (20) persons shall

12

| nk | Local Payroll ID | Last Name | First Name | | Seniority Date | Classification | | Lead Status | Dept (ref only) | | Shift (ref only) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 600638 | Young | Victor | A | 12/2/2013 | Bonding Mechanic | | | 01087W | Yates | Shift 2 |
| | 600640 | Davis | Deborah | A | 12/2/2013 | Bonding Mechanic | | Lead | 01087D | Mercado | Shift 1 |
| | 600642 | Marable | Michael | A | 12/16/2013 | Bonding Mechanic | | | 01088X | Booth | Shift 2 |
| | 600652 | Drew | Michael | A | 1/6/2014 | Bonding Mechanic | | | 01084R | Montgomery | Shift 1 |
| | 600653 | Jones | Freddie | A | 3/10/2014 | Bonding Mechanic | | | 01084R | Montgomery | Shift 1 |
| | 600674 | Woods | Terrence | A | 4/14/2014 | Bonding Mechanic | | | 01084F | Milligan | Shift 1 |
| | 600678 | Pepito | Carlos | A | 5/19/2014 | Bonding Mechanic | | | 010TOL | Fitzsimmons | Shift 1 |
| | 600680 | O'Brien | Brandon | A | 5/19/2014 | Bonding Mechanic | | | 01887K | Leeman | Shift 1 |
| | 600713 | Sims | Chandon | A | 9/29/2014 | Bonding Mechanic | | | 01888J | Leeman | Shift 1 |
| | 600716 | Goetz | Jay | A | 10/13/2014 | Bonding Mechanic | | | 01084B | Milligan | Shift 1 |
| | 600719 | Hansen | Richard | A | 10/27/2014 | Bonding Mechanic | | | 01088V | Cunningham | Shift 1 |
| | 600722 | Beck | Jason | A | 11/3/2014 | Bonding Mechanic | | | 01087K | Cunningham | Shift 1 |
| | 600727 | Coonce | David | A | 12/1/2014 | Bonding Mechanic | | Lead | 01887K | Leeman | Shift 1 |
| | 600730 | Walker | Kristopher | A | 1/5/2015 | Bonding Mechanic | | | 01070A | Henderson | Shift 1 |
| | 600735 | Davis | Darrell | A | 3/30/2015 | Bonding Mechanic | | | 01088U | Starnes | Shift 1 |
| | 600737 | Phipps | Adrian | A | 1/4/2016 | Bonding Mechanic | | | 22703 | Leonard | Shift 1 |
| | 232909 | Phelps | Jeffrey | A | 5/31/2016 | Bonding Mechanic | | Lead | 02261E | Kubat | Shift 1 |
| | 600366 | Licht | Thomas | A | 7/10/2017 | Bonding Mechanic | | Lead | 01087C | Doll | Shift 2 |
| | 600744 | Sanders | Lisa | A | 7/24/2017 | Bonding Mechanic | | | 01087W | Mercado | Shift 1 |
| | 600747 | Scott | Kevin | A | 7/24/2017 | Bonding Mechanic | | | 01087B | Gholston | Shift 3 |
| | 600751 | Miller | Trip | A | 7/24/2017 | Bonding Mechanic | | | 01084S | Smith | Shift 1 |
| | 600755 | Busch | Michael | A | 8/7/2017 | Bonding Mechanic | | | 01088D | Cunningham | Shift 1 |
| | 600757 | Jackson | Demoncilli | A | 8/14/2017 | Bonding Mechanic | | | 01087D | Mercado | Shift 1 |
| | 600758 | Gilbert | Marsha | A | 8/14/2017 | Bonding Mechanic | | | 01087M | Gholston | Shift 3 |
| | 600759 | Lipford-Pegues | Darcel | A | 8/14/2017 | Bonding Mechanic | | | 01087N | Mercado | Shift 1 |
| | 600765 | Farrell | Dennis | A | 8/14/2017 | Bonding Mechanic | | | 01088E | Booth | Shift 2 |
| | 600766 | Fitzsimmons | Dana | A | 8/28/2017 | Bonding Mechanic | | | 01087D | Mercado | Shift 1 |
| | 600767 | Jones | Peter | A | 8/28/2017 | Bonding Mechanic | | | 01887K | Leeman | Shift 1 |
| | 600768 | Agnew | Mark | A | 8/28/2017 | Bonding Mechanic | | | 01087W | Mercado | Shift 1 |
| | 600773 | Alford | Kenneth | A | 9/29/2017 | Bonding Mechanic | | | 01087M | Gholston | Shift 3 |
| | 600778 | Watts | Gregory | A | 10/15/2017 | Bonding Mechanic | | | 01088C | Binion | Shift 1 |
| | 600780 | Boyer | Brent | A | 10/16/2017 | Bonding Mechanic | | | 01088X | Cunningham | Shift 1 |
| | 600784 | Hayes | Mark | A | 10/16/2017 | Bonding Mechanic | | | 01087N | Mercado | Shift 1 |
| | 600785 | Bogan | Luther | A | 10/16/2017 | Bonding Mechanic | | | 01087D | Mercado | Shift 1 |
| | 600789 | Marty | Matthew | A | 1/29/2018 | Bonding Mechanic | | | 01087B | Gholston | Shift 3 |
| | 600799 | Williams | Kendrick | A | 10/1/2018 | Bonding Mechanic | | | 01087J | Doll | Shift 2 |
| | 600801 | Reed | Richard | A | 10/1/2018 | Bonding Mechanic | | | 01084E | Potts | Shift 1 |
| | 600803 | Johnson | Cameron | A | 10/1/2018 | Bonding Mechanic | | | 01087N | Mercado | Shift 1 |
| | 600804 | Manning | Jeffrey | A | 10/15/2018 | Bonding Mechanic | | | 01988Z | Smith | Shift 1 |

 N 1 of 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TRACI WEBB, )
)
Plaintiff(s), )
)
v. ) Case No. 4:22-cv-00289-SRC
)
GKN AEROSPACE NORTH AMERICA, )
INC., et al., )
)
Defendant(s). )

**Memorandum and Order**

Five years after Traci Webb started working for GKN Aerospace, a serious motorcycle accident left her in a coma for twenty days and caused permanent damage to one of her eyes. When she returned to work, GKN accommodated Webb's doctor-imposed physical limitations—which included not driving at night and not moving more than twenty-five pounds—by allowing her to only work the first shift. Years later, after she reported GKN to an ethics authority for what she believed were violations of federal quality-control regulations regarding aircraft-part manufacturing, Webb claims GKN constructively discharged her by moving her to a shift that failed to accommodate her physical limitations. After Webb filed a lawsuit in state court, GKN removed the case, and now moves to dismiss for failure to prosecute and failure to state a claim. The Court grants the motion in part and denies it in part.

**I. Background**

For purposes of the motion to dismiss, the Court accepts as true the following facts Webb alleges in her amended complaint.[1] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[1] A "petition" in Missouri state court serves as the analogue of a federal "complaint."

2

GKN Aerospace North America, Inc. and GKN Aerospace of St. Louis, LLC (collectively, "GKN") employed Webb from April 2007 to March 2020. Doc. 9 at ¶ 7. In 2013, a motorcycle accident left Webb in a coma for twenty days and required a month-long hospital stay. *Id.* at ¶¶ 8, 27. As a result of her injuries, which included permanent damage to her left eye, Webb's doctors restricted her from driving at night and from "pulling, pushing or lifting anything over 10 to 25 lbs." *Id.* at ¶ 9. These restrictions "prevented her from being able to work the second shift from 3:00 p.m. to 11:00 p.m." *Id.* Starting in 2015, as part of her job duties, Webb refused to approve "out of specification operations" in the facility; refused to approve parts that had lost "traceability"; and refused to approve the use of expired adhesive in the making of airplane wing parts because it would violate [Federal Aviation Administration] regulations. *Id.* at ¶ 11. In February 2019, she alleges she reported upper GKN management to an ethics authority for mismanagement, unethical behavior, and violation of applicable standards and policies—including demanding approval for out-of-specification operations; wanting [Webb] to move parts without completed work orders, losing traceability; and having employees "lay-up" expired adhesive. *Id.* at ¶ 12. According to Webb: "Defendants' actions were or would have been in violation of Defendants' and/or Boeing's legally-mandated quality system and would have constituted misrepresentations and/or misleading statements in violation of applicable federal regulations. These parts were ultimately to be used in Boeing's F-18 fighter aircraft." *Id.* at ¶ 13.

After Webb made her ethics complaint, she claims that team leaders and other managers and supervisors repeatedly harassed her and created a hostile work environment "as a result of her workplace restrictions and ethics complaint." *Id.* at ¶ 14. This harassment included supervisors and team leaders: "delivering parts to other employees but not to her, preventing her from doing her job; mocking her and laughing at her; yelling at her and verbally abusing her



# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| **CHARGE PRESENTED TO:** | **AGENCY CHARGE NO.** |
|---|---|
| EEOC | 560-2024-03635 |
| Missouri Commission On Human Rights | |

Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)*: JASON D. BECK

Phone No.: 314-401-3851
Year of Birth: 1980
Mailing Address: 3820 TRINITY CIR
FLORISSANT, MO 63034

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: BOEING ST. LOUIS
No. Employees, Members: 501+ Employees
Phone No.:
Mailing Address: 325 JAMES S MCDONNELL BLVD
HAZELWOOD, MO 63042, UNITED STATES OF AMERICA
Name:
No. Employees, Members:
Phone No.:
Mailing Address:

DISCRIMINATION BASED ON:

Race

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 05/01/2024
Latest: 06/12/2024

THE PARTICULARS ARE:

I was employed by the above-named employer from November 2014 until my discharge on or about June 12, 2024. My position was Assembly Mechanic. My supervisor was John Cunningham, and his supervisor was Omar Dorado, VSM.

My initial employer was GKS, which was later acquired by Melrose. Subsequently, the company was acquired by Boeing in late April 2024. The incidents of racial discrimination began following Boeing's acquisition. Despite having a decade of experience performing the identical role in the same location, I was placed on probation as if I were a new employee. During my 30-day performance review, I was confronted with false or misleading accusations. For instance, it was claimed that I had engaged in cell phone usage; however, the use of cell phones is mandatory for logging into our systems due to the requirement of multi-factor authentication. On or about June 4, 2024, I inadvertently entered an incorrect offset into a machine, resulting in a crash. It is important to note that no equipment or personnel were harmed during this incident. I was dismissed from my position on June 12, 2024, due to this event. However, I am aware that three Caucasian employees were neither disciplined nor discharged for the same issue. Furthermore, within the first 90 days following Boeing's acquisition, I observed that 14 African American employees, each with over ten years of experience, were terminated, in contrast to only two Caucasian employees.

I believe I have been discriminated against due to my race, African American in violation of Title VII of the Civil Rights Act of 1964, as amended.

Q1076

# Steward Complaint Log
## IAMAW District 837

Grievant's Name: **Kevin Scott**   Clock Number: **600747**   Classification: **Bonding Mechanic**

Department: **1087B**   Shift: **3**   Building: **2**   Dept. Phone: **N/A**   Local Lodge: **387**

Address: _____   City: _____   State: _____   Zip: _____

Home Phone: _____   Rate of Pay: _____   Seniority Date: **7-7-17**

Shop Steward: **Jason Beck**   Department Phone: **N/A**   Cell Number **(314) 401-3851**

Violation: **Retaliation**   Article: **11**   Section: **2** (other Legally protected trail.)

Date of Occurrence: **4-25-22**   Date Steward Notified: **5-15-22** **6-2-22**   Date Filed: **6-2-22**

### Complaint

See attachments   I would Like for this write up to be thrown away, or receive my back pay. honorsff

(7 pages.)

### Foreman's Decision

Foreman's Name: **Karl Ghulston**   Dept. Phone Number: **314 5035512**   Pager Number: _____   Date: **6/3/22**

This grievance is untimely, more than 30 days old Article 10 section 2.

### Stewards Remarks

IM WRITING THIS GRIEVANCE BECAUSE I FEEL THE COMPANY HAS VIOLATED MY RIGHTS UNDER ARTICLE 11 (DISCRIMINATION), AND THAT'S RETAILITAION.   I FEEL LIKE I WAS RETAILIATED AGAINST, BECAUSE THE COMPANY CHOOSE TO ENFORCE AN ILLEGAL WRITE UP, BECAUSE THE  COMPANY CHOOSE BREAK A PREVIOUS AGREEMENT MADE  BY INCLUDED IT IN THIS CURRENT WRITE UP. (FACT 1)-JEREMY STRITZEL (SR LABOR RELATIONS GENERALIST) STATED IN AN EMAIL TO MARK COREY (MY THEN TEAM LEADER) THAT PER THE TERMS OF YOUR GRIEVANCE SETTLEMENT, YOUR RECENT TERMINATED STATUS HAS BEEN CONVERTED TO AN UNPAID SUSPENSION IN YOUR RECORDS???????  NOW NOTICE ON THE WRITE UP IT SAYS VERBAL WARNING, (ATTENDANCE POLICY).   UNPAID SUPSPENSIONS DOES NOT SHOW UP ON YOUR RECORDS AS ATTENDANCE POLICY VIOLATIONS??????  (FACT 2) NOW NOTICE DURING THE 7 POWER POINT AGREEMENT IT STATES IN POWER POINT 4 HOW I WOULD BE PLACED ON AN LAST CHANCE AGREEMENT AND THAT THIS LAST CHANCE AGREEMENT WILL EXPIRE IN 12 MONTHS, THIS IS WHAT IS KNOWN AS A STAND ALONE AGREEMENT. NOW LET'S LOOK AT POWER POINT 5 WHICH STATES THAT THIS AGREEMENT SHALL NOT BE USED BY EITHER THE COMPANY OR THE UNION IN ANY FUTURE SIMILAR OR DISSIMILAR CASE. SO LETS TAKE A CLOSER LOOK, TO SEE WHY THESE ARE CONSIDERED STAND ALONE AGREEMENTS.   POWER POINT 4 STATES THAT THE LAST CHANCE AGREEMENT WILL NOT HAVE ANY RECOURSE THROUGH THE GRIEVANCE OR ARBITRATION PROCESS, AND THE RESULT WILL END IN TERMINATION.  SEE THAT LAST CHANCE AGREEMENT EXPIRED IN 12 MONTHS (2019), THAT'S WHY IM ABLE TO GRIEVED THIS CURRENT ILLEGAL WRITE UP. POWER POINT 5 STATES HOW THIS AGREEMENT CANNOT BE USED IN ANY FUTURE CASE, SEE BOTH POWER POINTS ARE STANDALONE AGREEMENTS, WHY BECAUSE A LAST CHANGE AGREEMENT IS JUST THAT A LAST CHANCE, ANY FUTURE CASES WILL ONLY HAVE A FUTURE ONCE THAT THE LAST CHANCE EXPIRES; SO IN OTHER WORDS YOU CAN NOT COMBINDED MY LAST CHANCE AGREEMENT THAT EXPIRED IN 12 MONTHS WITH OTHER POWER POINTS.  (I.E. BECAUSE IF THAT WAS THE CASE I COULD'VE HAVE JUST WAITED AFTER THE 12 MONTHS AND ASK FOR MY BACK PAY?????)  STAND ALONE AGREEMENTS ARE SERIES OF AGREEMENTS OR STIPULATIONS

THAT'S MUST BE FOLLOWED INDIVIDUALLY UNTO THE TOTALITY OF THE OVERALL AGREEMENT. (FACT 3)  THIS SHOWS A WRITE UP THAT WAS GIVING TO ME ON <u>FEB 2021</u> AND THAT DOES NOT INCLUDE THE PREVIOUS AGREEMENT I HAD WITH THE COMPANY. SO WHY IS THIS IMPORTANT!!!!!!!   THE WRITE UP IN <u>FEB OF 2021</u> SHOWS NO AGREEMENT VIOTATIONS, AND THE WRITE UP IN <u>APRIL 2022</u> VIOLATED THE AGREEMENT.  WHY IS THIS SO IMPORTANT???? WELL IN BETWEEN THE TWO WRITE UP I FILLED A CHARGE AGAINST THE COMPANY <u>JAN 2022</u>.   SO BEFORE I FILLED NO VIOLATIONS OF THE AGREEMENT I HAD AFTER I FILLED SHOWS A VIOLATION.!!!!! THIS PROVES THERES A ZEALOUSNESS FOR RETAILIATION AGAINST ME BECAUSE OF MY PREVIOUS FILLINGS AGAINST THE COMPANY. THIS RETALIATORIAL TARGETING SHOWS AN OVER-REACHING ON THE PART OF THE COMPANY TO CREATE A FALSE NARRATIVE ABOUT ME BY TRYING TO ENFORCE AN ILLEGAL WRITE UP, BY TARGETING ME, THEREFORE CREATING A HOSTILE WORK ENVIORNMENT.  MY PREVIOUS DICIPLINE FORM AGAINST ME DIDN'T MENTION MY PRIOR VIOLATION, SO THIS PROVES IT WASN'T A MISTAKE, BUT INTENTIONAL, BECAUSE THIS ONE DID!!!!!!


I USED 5HRS OF MY FMLA FOR SUNDAY 4/16/22 AND I CAME TO WORK AFTER THAT, I WAS SENT HOME BY JOSE BRACKINS, AND GIVEN A POINT (<u>ATTENDANCE VIOLATIONS</u>).  I CAME IN AND SPOKE WITH HR ABOUT BEING DISCRIMINATED AGAINST BECAUSE OF MY FMLA AND HR CORRECTED THE POINT ISSUES, BUT IM STILL WAITING ON MY 3 HRS OF PAY THAT WAS OWED TO ME BECAUSE IT WAS PUNISHMENT OF NOT ALLOWING ME TO FINISH UP THE DAY IN QUESTION IN WHICH I REPORTED TO WORK BUT WAS NOT ALLOWED TO WORK!!!!!  IM STILL WATING ON THIS ISSUE TO GET RESOLVED??????

THIS SHOWS RETALIATORIAL PATTERNS OF INTENTIONALITY WHEN IT COMES TO ME.

**** I ALSO HAVE IT ON RECORD THAT THE COMPANY IS USING TEAM LEADER KARL GHOLSTON AND JOSE BRACKINS TO CARRY OUT THIS RETALIATION TARGETING THEY HAVE FOR ME.



GKN AEROSPACE

GKN Aerospace -
St. Louis
142 J S McDonnell Blvd
Hazelwood, MO 63042
USA
(314) 264-3000
(314) 264-3010

Q4 of 96

November 5, 2018

Kevin Scott
27 Ranchview Dr.
St. Louis, MO 63033

Dear Kevin:

Per the terms of your grievance settlement, your recent terminated status has been converted to an unpaid suspension in your record. We cannot, however, change the fact that you were paid out for earned, unused vacation and sick time at the time of your termination. We will, therefore, approach your vacation and sick time in the same manner as we do for other rehires:

- Your seniority date remains 07/24/2017.
- Your sick and vacation anniversary dates change by the number of days you were on suspension. Your new sick and vacation anniversary date is 11/30/2017.
- When you were terminated, you were paid for your unused and accrued vacation time in the amount of 30.28 hours. This rounds to 32 hours. You are allowed to use these hours as unpaid time off between now and 04/29/2018. You will receive 11 hours, your prorated amount of new vacation hours, on January 1, 2019.
- You were paid 22.04 hours of sick time at the time you were terminated. This rounds to 22 hours. You may use this time as unpaid time off until 11/29/2019. You will receive 2 paid hours, your prorated amount of new sick hours, on 11/30/2018.
- These unpaid vacation and sick hours allow you to take time off without being assessed attendance points. The same scheduling guidelines apply as for regular paid time off. You and your supervisor must track how many of these unpaid hours you use. They will be entered as "O" time in Autotime.
- Your health insurance benefits will be reinstated back to your termination date so that there is no break in coverage. It is important to still participate in the reenrollment process in November for your 2019 benefits. If you have any questions, you can contact the GKN Benefits Service Center. Their website is www.gkn.benefitsnow.com. Their phone number is 800-861-6481.

If you have any questions, please contact me at (314) 264-3029.

Sincerely,

Jeremy Stritzel
Sr. Labor Relations Generalist

cc: Mark Corey

EXPECT > MORE

GKN AEROSPACE

GKN Aerospace –
St. Louis
142 J S McDonnell Blvd
Hazelwood, MO 63042
USA
(314) 264-3000
(314) 264-3010

Q5 of 96

October 19, 2018

Steven McDerman
President & Directing Business Representative
Lodge 837, I.A.M.A.W, AFL-CIO
212 Utz Lane
Hazelwood, Mo. 63042

Re: Grievance 18-12; Kevin Scott Termination

Dear Mr. McDerman:

The Company and Union met on July 17, 2018, to discuss the referenced grievance at the third step of the grievance procedure. Present for the Union was Messrs. Albin, Adams, Lloyd, and you. Present for the Company was Messrs. Famin, Dorado and Steve Manasco. Then on 7/20/2018, The Company sent you a letter denying Mr. Scott's grievance.

After further consideration and in an attempt to resolve this grievance, the Company proposes the following:

     The termination will be reduced to a suspension, all time served, and Mr. Scott will return to work on October 29, 2018.

     Mr. Scott will not receive any back pay.

     Mr. Scott will come back with 8.5 points in attendance points.

     Mr. Scott will be placed on a last chance agreement which specifies any wrong doing on Mr. Scott's part will result in his termination. Should this occurs, Mr. Scott will not have any recourse through the grievance or arbitration process. This last chance agreement will expire in 12 months from the signing of this agreement.

     This agreement is being made on a non-precedent setting basis. It shall not be used by either the Company or the Union in any future similar, or dissimilar, case.

     The Union agrees this grievance is resolved.

EXPECT > MORE

Q6of7D

## Last Chance Agreement between
## Kevin Scott, 600747 & GKN Aerospace, Inc.

- On June 22, 2018, Kevin Scott was discharged for exceeding the allowable points in GKN's attendance policy. Through the grievance process, the Company has agreed to reduce the termination to an all-time served suspension; however, Mr. Scott is being placed on a last chance agreement. Should Mr. Scott violate any Company policy, rule, participate in any act of wrong doing, or partakes any incident(s) of poor work performance, his employment will be terminated. If Mr. Scott is terminated, he will have no recourse through the grievance or arbitration process. This last chance agreement will expire in 12 months from the signing of this agreement.

For the Company:

_Jeremy Stritzel_
Jeremy Stritzel,
Sr. Labor Relations Generalist
GKN Aerospace, Inc.

For the Union:

_Steven McDerman_
Steven McDerman
President & Directing Business Rep.
Lodge 837, I.A.M.A.F, AFL-CIO

This last chance agreement has been fully explained to me. My signature below indicates that I fully understand what is expected of me. I understand that if I violate this agreement, my employment will be terminated.

_Kevin Scott_
Kevin Scott, # 600747

R 1 of 14

# Steward Complaint Log
## IAMAW District 837

Grievant's Name: Kevin Scott    Clock Number: 605747    Classification: Bonding Mechanic

Department: 1087B    Shift: 3    Building: 2    Dept. Phone: _____ Local Lodge: 387

Address: _____    City: _____    State: _____    Zip: _____

Home Phone: _____    Rate of Pay: _____ Seniority Date: _____

Shop Steward: Jason Beck Department Phone: N/A    Cell Number 314-401-3851

Violation: Retaliation    Article: 11    Section: 2

Date of Occurrence: 4-25-22   Date Steward Notified: 6-10-22   Date Filed: 6-10-22

### Complaint

Resubmitted on 6-10-22 originally filed Originally filed on
6-2-22.
                13 pages.
                        I would Like for this write up to
                        be thrown Out or Receive back pay.

### Foreman's Decision

Foreman's Name: Karl Gholston Dept. Phone Number: 314 503 5572 Pager Number: _____ Date: 6/14/22
section 4 The company shall not be required to process any complaint not present in step 1
within five working days after the occurrence of act (act occurrence; discipline issued on 4/25/22
from the date that the union became aware of or had reasonable knowledge that the grievance
existed not to exceed 15 (fifteen) working days. Extenuating circumstances will be
considered. The Company was never made aware of any extenuating
circumstances that would require additional time.
                        Complaint Denied

### Stewards Remarks

See Attachment

**ATTACHMENT TO MY GRIEVANCE COMPLAINT:**

**ARTICLE 10: STATES EXTENUATING CIRCUMSTANCES WILL BE CONSIDERED.  SO THIS IS MY REASONING. BECAUSE OF MY HISTORY WITH THE COMPANY TO ENSURE FAIRNESS I HAD TO TALK WITH THE EEOC ABOUT CERTAIN THINGS.  SO MY INTERVIEW WAS ON 5/31/2022, SO I FILED MY GRIEVANCE ON 6-2-2022.   ATTACH IS MY SCHEDULE DATE WITH THE EEOC.  SO NOW I WANT TO REINSTATE MY PREVIOUS GRIEVANCE ALONG WITH THE ATTACHMENT OF MY EXTENUATING CIRCUMSTANCE.**

**Prohibited Personnel Practices (5 USC § 2302(b))**

1. **ITS AGAINST THE LAW NO. 9:   take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of—**

   A. **the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation—**

      **(i) with regard to remedying a violation of paragraph (8); or (ii) other than with regard to remedying a violation of paragraph (8);**

   B. **testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A)(i) or (ii);**

   C. **cooperating with or disclosing information to the Inspector General (or any other component responsible for internal investigation or review) of an agency, or the Special Counsel, in accordance with applicable provisions of law; or**

**D.** for refusing to obey an order that would require the
    individual to violate a law, a rule or regulation;

# Fwd: Reminder of Scheduled Interview for EEOC Inquiry 560-2022-00994

From: Kevin Scott (ksgeorge0612@gmail.com)

To:     kevinscott1977@yahoo.com

Date:   Thursday, June 9, 2022, 12:33 PM CDT

---------- Forwarded message ---------
From: <noreply@eeoc.gov>
Date: Fri, May 27, 2022, 5:22 AM
Subject: Reminder of Scheduled Interview for EEOC Inquiry 560-2022-00994
To: <ksgeorge0612@gmail.com>

This is a reminder that you have scheduled an interview with the EEOC to discuss the inquiry you submitted online (560-2022-00994). Please note the following information about your interview:

- The interview will be by-phone
- Date/Time of interview: 05/31/2022 at 08:30 AM CDT

At the time of your interview, please have the password for your EEOC Public Portal user account with you.

If you are unable to keep this appointment, please reschedule or cancel it.

<div align="center">

Sign-in to Reschedule or Cancel Appointment

</div>

*Notice of Confidentiality: The information contained in this transmission may contain privileged and confidential information, including information protected by federal and state privacy laws. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited and may be unlawful. If you are not the intended recipient, please contact us at digitalsupport@eeoc.gov and destroy all copies of the original message and attachments.*

# Steward Complaint Log
## IAMAW District 837

Grievant's Name: Kevin Groff  Clock Number: 600747  Classification: Bonding Mechani

Department: 1087 B C  Shift: 3  Building: 2  Dept. Phone: ____  Local Lodge: 837

Address: 27 Branchview Dr  City: St. Louis  State: Mo  Zip: 63033

Home Phone: 314-305-0646  Rate of Pay: ____  Seniority Date: 7-7-17

Shop Steward: Steve Bucl  Department Phone: ____  Pager Number: ____

Violation: Discrimination  Article: 11  Section: 2

Date of Occurrence: 11-17-22  Date Steward Notified: 11-17-22  Date Filed: 11-17-22

### Complaint

See attached copy

Right to manage does not apply if its because of Discrimination

or Retaliation Reasons.

### Foreman's Decision

Foreman's Name: ____  Dept. Phone Number: ____  Pager Number: ____  Date: ____

### Stewards Remarks

SEE ATTAChed Copy

IM WRITING THIS GRIEVANCE BECAUSE I FEEL THE COMPANY HAS VIOLATED MY RIGHTS UNDER ARTICLE 11 SEC 2 (DISCRIMINATION), AND THAT'S RETAILITAION.   I FEEL LIKE I WAS RETAILIATED AGAINST, BECAUSE OF MY PREVIOUS FILINGS AGAINST THE COMPANY, AND THAT'S CONCERNING OVERTIME.  I HAVE HAD PREVIOUS FILLINGS WITH THIS SAME ISSUE AND KARL HAS CONTINUED TO DENY ME SUNDAYS, AND YET EVERYONE ONE MY SHIFT HAS BEEN SCHEDULED FOR SUNDAYS DURING THIS ROTATION, AND ALSO FIRST SHIFT IS ABLE TO OFFER ALL OF THEIR PEOPLE EVERY WEEKEND WITH MORE PEOPLE ON SHIFT AND YET KARL HAS CONSISTENLY GIVEN ME EVERY OTHER WEEK AND SAT ONLY!!!!!  THIS ACTION HAS ALLOWED AN ENVIRONMENT OF THE LACK OF TRANSPARENCY AND THE CONTINUED MANIPULATION OF THE OVERTIME SUMMARY, THUS CAUSING THE ENUMERATION OF VERY HOSTILE AND RETAILITORIAL ENVIRONMENT.  The EEO anti-retaliation provisions also make it unlawful to retaliate against an individual for opposing any practice made unlawful under the employment discrimination statutes.

KEVIN SCOTT

600747 11/16/2022

# Steward Complaint Log
## IAMAW District 837

Grievant: Kevin Scott  Clock Number: 600747  Classification: Bonding Mechanic

Department: 1087B  Shift: 3  Building: 2  Dept. Phone: 4-3052  Local Lodge: **387**

Address: 27 Ranchview Dr  City: St.louis  State: MO  Zip: 63033

Phone: 314-305-0646  Rate of Pay: _____  Seniority Date: 07/27/17

Shop Steward: _____  Phone: _____

Violation: Retaliation  Article: 14  Section: 2

Date of Occurrence: 10-18-22  Date Steward Notified: 10-21-22  Date Filed: 10-21-22

### Complaint:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

### Foreman's Decision:

Foreman's Name: _____  Dept. Phone Number: _____  Date: _____

_____
_____
_____
_____
_____
_____
_____

### Steward's Remarks:

_____
_____
_____
_____
_____

**Scott, Kevin**

---

| | |
|---|---|
| **From:** | Scott, Kevin |
| **Sent:** | Wednesday, October 19, 2022 3:57 AM |
| **To:** | Niedringhaus, Kelly; Blanke, Joe; Beck, Jason; 'calbin@iam837.0rg'; 'Thomas Boelling' |
| **Subject:** | NLRB :  DUTY OF FAIR REPRESENTATION |

UNDER SEC 7: NATIONAL RELATIONS ACT
I HAVE A RIGHT TO FILE A GRIEVANCE IN WHICH I THINK THERE WAS A CONTRACT VIOLATION, AND IN THIS CASE IT
FALLS UNDER ARTICLE:14  DISCRIMINATION SEC 2  RETALIATION.  I WAS INFORM BY MY SUPERVISOR KARL THAT MY
CURRENT SHOP STEWARD IS STEPPING DOWN. SO IM TRYING TO FILE ANOTHER GRIEVANCE AGAINST KARL BECAUSE
HE TOOK ME OFF OF MY MACHINE AND REPLACE ME WITH ANOTHER PERSONNEL, ALL BECAUSE I ASK FOR MY SHOP
STEWARD TO BE PRESENT OF HIM ASK ME TO TURN THE OLD AGFM UP FROM 50% TO 75%.  AND THE OLD AGFM JUST
GOT FIXED AFTER BEING DOWN FOR MONTHS.  THIS IS JUST A CONTINUATION OF THE CONSTANT RETAILITORY
PRACTICES AND THE HOSTILE WORK ENVIRONMENT THAT'S HE'S CREATING FOR ME.  SO ONCE AGAIN BEFORE I CAN GO
TO THE LABOR BOARD I HAVE TO SHOW THAT I INFORMED BOTH THE COMPANY AND THE UNION OF THE MATTER
THAT'S GOING ON.  THIS IS THE LAW.
IM REQUESTING MY ADDITIONAL GRIEVANCE FOR 10/18/22 BE FILED ASAP.
THANK YOU

## MY HR COMPLAINT

From:  Kevin Scott (kevinscott1977@yahoo.com)

To:     kelly.niedringhaus@gknads.com

Date:  Tuesday, April 26, 2022 at 08:13 PM CDT


GOOD MOURNING KELLY, I HAVE OFFICIALLY FILED AN HR COMPLAINT.  I WILL BE IN WITH THE HARD COPIES
IN ORDER FOR HR TO MAKE COPIES.  I JUST WANT TO MAKE CLEAR, IM NOT LOOKING TO FIGHT OR
ANYTHING IM JUST ASKING FOR THIS ILLEGAL WRITE UP TO BE THROWN OUT, AND ALL I ASK IS FOR YOU TO
LOOK AT THE FACTS AND MAKE YOUR DETERMINATION THANK YOU.


HR.pdf
276.1 kB

# SCAN

Your Name: Kevin Scott

Please check the following preferences.

File Format:  PDF _____    JPEG _____

Color Mode:  Color _____    Black/White ✓

Scanning:  Front side ✓    Both sides _____

Sending to (email): KEVinscott1977@yahoo.com

Optional additional emails:

Subject: HR Complaint

Message:



HR COMPLAINT 4/26/2022

KEVIN SCOTT

600747

IM WRITING THIS COMPLAINT LETTER BECAUSE I FEEL IM BEING RETAILATED AGAINST BECAUSE OF MY PREVIOUS FILLINGS AGAINST THE COMPANY. THIS TIME IT'S WITH TEAM LEADER JOSE BRACKINS.

**FACT 1:** I USED 5HRS OF MY FMLA FOR SUNDAY 4/16/22 AND I CAME TO WORK AFTER THAT, I WAS SENT HOME BY JOSE BRACKINS, AND GIVEN A POINT (ATTENDANCE VIOLATIONS). I CAME IN AND SPOKE WITH HR ABOUT BEING DISCRIMINATED AGAINST BECAUSE OF MY FMLA AND HR CORRECTED THE POINT ISSUES, BUT IM STILL WAITING ON MY 3 HRS OF PAY THAT WAS OWED TO ME BECAUSE IT WAS PUNISHMENT OF NOT ALLOWING ME TO FINISH UP THE DAY IN QUESTION IN WHICH I REPORTED TO WORK BUT WAS ALLOWED TO WORK.

**FACT 2:** JOSE BRACKINS NOTED IN HIS DISCIPLINE ACTION FORM THAT MY LEFT SHOE WAS OFF. I INFORMED JOSE THAT THIS WAS THE FIRST TIME EVER I WAS DROWSY, BUT IT WAS BECAUSE OF THE PAIN MEDICATION I WAS TAKING FOR MY FMLA ISSUE THAT DAY. BUT YET HE STILL CHOOSE TO WRITE ME UP.

NOW LETS LOOK AT THE FACTS OF THIS ISSUE. ITS ON RECORD OF MY FMLA ISSUE I HAVE IN WHICH IS MY LEFT KNEE. SO BY JOSE IN HIS DISCIPLINE FORM ADMITTING THAT MY LEFT SHOE WAS OFF PROVES MY POINT THAT I WAS EXPERIENCING PAIN FROM WHICH IS ALREADY OFFICIALLY DOCUMENTED WITH THE COMPANY (ATTACH TO MY COMPLAIN). SO HERE'S MY DOCTOR STATEMENT (ATTACH TO MY COMPLAINT) SHOWING THAT I CAME IN TODAY FOR KNEE PAIN TREATMENT, ON 4-26-22 FOR TODAY, STATING THAT I MAY BE REQUIRE TO TAKE PAIN MEDICATION IN WHICH MAY CAUSE DROWSINESS. THAT WAS JUST FOR THE PAIN I FELT TODAY BUT MY FMLA GOES FROM JAN 1, 2022-JUL 1 2022. SO JUST AS POINTS WITH FMLA IS RETROACTIVE SO IS MY EXPERIENCE WITH MY PAIN IN WHICH FROM TIME TO TIME I MAY BE REQUIRE TO TAKE PAIN MEDICATION, WHICH MAY CAUSE ME TO BE DROWSY IN WHICH WAS THE CASE OF THIS INCIDENT THAT TOOK PLACE ON 4-20-22. I TOLD JOSE THAT NEXT TIME I WOULD BE CAREFUL IN TAKING MY MEDICATION BEFORE WORK BUT I THOUGHT I COULD WEATHER THE PAIN WITH MEDICATION, THAT DAY BUT I WAS NEVER GIVEN ACCOMMODATIONS FOR MY ILLNESS INSTEAD I WAS JUST GIVEN A WRITE UP.

**FACT 3:** THIS IS THE BIGGEST ONE THAT PROVES MY RETAILITORY CASE. JOSE BRACKINS WAS NOT A TEAM LEADER IN 2018, BUT YET IN HIS DICIPLINARY ACTION FORM HE STATES OF A VERBAL WARNING ON 6/22/2018 OF A LIST OF PRIOR VIOLATION AS A BUILD UP FOR HIS DISCIPLINE ACTION FORM AGAINST ME. THIS VIOLATES THE WRITTEN AGREEMENT ( A COPY OF IT IS ATTACH TO MY COMPLAINT) THAT WAS MADE IN A PREVIOUS CASE IN WHICH THE COMPANY AGREED (JEREMY STIGZEL LABOR RELATIONS (2018) IT SHALL NOT BE USED BY EITHER THE COMPANY OR THE UNION IN ANY FUTURE SIMILAR OR DISSIMILAR CASE. THIS VIOLATIONS OF WHAT WAS ALREADY AGREED WITH THE COMPANY IN 2018 IN WHICH JOSE WASN'T EVEN A TEAM LEADER SHOWS INTENTIONAL DICRIMINATORY, RETAILIATION, PATTERNS OF INTENTIONALITY WHEN IT COMES TO ME.

MY PREVIOUS DICIPLINE FORM AGAINST ME DIDN'T MENTION MY PRIOR VIOLATION, SO THIS PROVES IT WASN'T A MISTAKE, BUT INTENTIONAL BUT THIS ONE DID SO BECAUSE OF VIOLATION OF AN AGREEMENT THE COMPANY DID I THINK THIS WRITE UP SHOULD BE THROWN OUT AND EXPUNGED FROM MY RECORD.

**** JUST NOTE I HAVE IT ON RECORD NOW OF DICRIMINATION AND RETAILIATION INCIDENTS WITH BOTH KARL AND ALSO JOSE.



## NEW ABSENCE/LEAVE CLAIM    ✚

---

Absence/Leave AC-22-398327                    Employees Own Illness or Injury
Open                                                      Intermittent

Sat, Jan 1, 2022                                        Fri, Jul 1, 2022  ❯
        3 times every week for 1 day          3 times every week for 3 days

0.20004200.20    1 1 2210.20 1 32 2 13    21120320    0.2803080020

---

Absence/Leave AC-21-379920                    Employees Own Illness or Injury
Closed                                                    Continuous

Mon, Dec 20, 2021                                    Fri, Dec 24, 2021  ❯
                            1 week

---

Absence/Leave AC-21-241339                    Employees Own Illness or Injury
Closed                                                    Intermittent

Sat, Dec 26, 2020                                      Tue, Jan 11, 2022  ❯
        3 times every week for 3 days          3 times every week for 3 days

3 33002202.22 5 40002010 12.201   2  25 4222424341216520040802 3   0

SCOTT, KEVIN

| Summaries | 3 | › |
| Help and Support | 1 | › |

| Absence/Leave | 3 | › |
| Disability Claims | 0 | › |

## Absence/Leave Time Summary

Regulations ☑ (https://standard.secure.force.com/eep/resource/1636595663000/cvab__AbsenceRegs/AbsLH/Federal+FMLA.html)
**Federal FMLA**



- ■ Pending
- ■ Approved
- ■ Deducted
- ■ Remaining

EXHIBIT

GKN Aerospace –
St. Louis
1421 S McDonnell Blvd
Hazelwood, MO 63042
USA
(314) 654-5000
(314) 654-5010

October 19, 2018

Steven McDerman
President & Directing Business Representative
Lodge 837, I.A.M. A.W. AFL-CIO
213 Wild Lane
Hazelwood, MO 63042

Re: Grievance 18-12-Hawk Scott Termination

Dear Mr. McDerman:

The Company and Union met on July 17, 2018, to discuss the referenced grievance at the third step of the grievance procedure. Present for the Union was Messrs. Albin, Adams, Lloyd, and you. Present for the Company was Messrs. Family, Portaland Steve Mattasco Theil, and 7/27/2018. The Company sent you a letter denying Mr. Scott's grievance.

After further consideration and in an attempt to resolve this grievance, the Company proposed the following:

1. The termination will be reduced to a suspension, all time served, and Mr. Scott will return to work on October 29, 2018.

2. Mr. Scott will not receive any back-pay.

3. Mr. Scott will come back with 8.5 points in attendance points.

4. Mr. Scott will be placed on a last chance agreement which specifies any wrong doing on Mr. Scott's part will result in his termination. Should this occurs, Mr. Scott will not have any recourse through the grievance or arbitration process. This last chance agreement will expire in 12 months from the signing of this agreement.

5. This agreement is being made on a non-precedent setting basis. It shall not be used by either the Company or the Union in any future similar, or dissimilar, case.

6. The Union agrees this grievance is resolved.

U8of10

If the Union is in agreement with the terms listed above, please sign below and return a copy to my office.

Sincerely,

Jeremy Stritzel
Sr. Labor Relations Generalist
GKN Aerospace, Inc.

**AGREED:**

Steven McDerman Date: 10-26-18
Steven McDerman, President & Directing Business Rep.
Lodge 837, I.A.M.A.W., AFL-CIO

EXPECT MORE

Date: 4/26/2022



MIDWEST BONE AND JOINT SURGERY

30 Apex Drive Suite #1 Highland, IL 62249
Phone 618-654-5400 Fax 618-654-8787
Felix F Ungacta, MD Robert Leb, MD

Name: Kevin Scott
Address: 27 Ranchview Dr, St Louis, MO 63033
DOB: 6/12/1977
Phone:

THE PATIENT WAS SEEN IN MY OFFICE TODAY FOR LEFT KNEE PAIN. THE PATIENT MAY BE REQUIRED TO TAKE PAIN MEDICATION WHICH MAY CAUSE DROWSINESS.

 **GKN AEROSPACE**

Print Date: 04/25/2022

## Discipline Action Form
### 220035-A01

| EMPLOYEE NAME | EMPLY NO | DEPT NO | MANAGER | ACTION DATE |
|---|---|---|---|---|
| Scott, Kevin, George | 600747 | 01087B | Karl Gholston | 04/20/2022 |

**Warning Level**

- [ ] Verbal Warning
- [x] Written Warning - 1st
- [ ] Written Warning - 2nd
- [ ] Final Written Warning
- [ ] Terminated

**Action Taken**

- [x] Reprimand
- [ ] Suspension
- [ ] Discharge

This disciplinary action is being assessed to you for the following reason:
Violation of GKN RULES and REGULATIONS  3. Produce, design and support our products and services in a manner that promotes the interest of GKN Aerospace, its employees, customers, and suppliers. * Sleeping. * Misuse of company time. On April 20, 2022 at approx... 0216 hours, I, Team Leader Jose Brackins, was checking in on the work progress at the Cutters. I noticed Kevin Scott was sleeping in a chair behind the post by the AGFM. Mr. Scott had his left safety shoe off in a manner in which he was preparing to sleep (See attached Photo). I then tapped him on the left shoulder three times before he woke up. I asked him if he was ok, and He said he was fine. After waking him, I told him that he needs to get back to work. I then left the room and went back to my desk. At approx. 0236 hours, I returned to the cutter area to make sure he was working and found him sleeping again in the same manner as before. I then woke him up for the second time and told him that he can't be sleeping on the job and that I was going to issue discipline for his actions.

Prior Violation(s)
02/19/2021 - Verbal Warning - Rule #2 * Damaging, defacing, or destroying company, employee, customer, or supplier property through willfulness or negligence.
06/22/2018 - Verbal Warning - Other Violations: Attendance Policy

Immediate corrective action must be taken to resolve this matter. Any failure to adhere to this matter will result in further disciplinary action being taken up to and including termination of employment

If not discharged, it is expected that your behavior will be corrected immediately.
If not corrected, additional appropriate action may be necessary.

| Supervisor / Manager | Date | Shop Steward | Date |
|---|---|---|---|
| *[signature]* | 4/25/22 | *[signature]* Jason Beeh | 4-25-22 |

I have read and understand the contents of this document and have received a copy.
My signature does not mean I agree with this action.

cc: Employee
    Supervisor
    Human Resource
    Union

| | Employee | Date |
|---|---|---|
| Manager *[signature]* Employee | R.T.S. JB | 4-25-22 |

You have been advised of the availability of the GKN Employee Assistance Program (EAP).
www.achievesolutions.net/gkn  1.866.756.6255

NOTE:  This document is not intended to conclude that all discipline will follow this format or level.  Appropriate levels of discipline and format will be issued depending upon the seriousness of the violation at the discretion of the company.

GKN St. Louis, LLC & Aerospace District
Lodge 837 (GKN St. Louis)
Case 14-CA-276983 & 14-CB-276984

## Confidential Witness Affidavit

I **Kevin Scott**, being first duly sworn upon my oath, state as follows:

I have been given assurances by an agent of the National Labor Relations Board (NLRB)
that this Confidential Witness Affidavit will be considered a confidential law enforcement
record by the NLRB and will not be disclosed unless it becomes necessary to produce this
Confidential Witness Affidavit in connection with a formal proceeding.

I reside at 27 Ranchview Drive, St. Louis, MO 63033

My cell phone number (including area code) is 314.305.0646

My e-mail address is kevinscott1977@yahoo.com

I am employed by GKN St. Louis

1. The Employer is a subcontractor for Boeing and Lockheed Martin and produces parts for
   military aircraft.   I would guess that there are around 600 employees in the facility.

2. I have worked for GKN since July 2017.  I am a bonding mechanic on the third shift.  I
   work on making the skin of military aircraft.  My supervisor is Karl Gholston.  Kelly
   Niedrignhaus is the labor relations manager.  She is the go-to person for union issues.

3. The Machinists/Aerospace Union Local 837 represents mechanics at the facility.  The
   Union and the Employer have a collective bargaining agreement with a grievance
   process.  Chris Albin is the Union's vice president and he handled my grievance.

4. The prior CBA was set to expire on January 26, 2021.  It was extended while a successor
   agreement was negotiated.  The membership ratified a successor agreement in late
   February 2021.

- 1 -                    Initials: _____

MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS
# MISSOURI COMMISSION ON HUMAN RIGHTS

| MICHAEL L. PARSON | ANNA S. HUI | DEREK M. HOLLAND | ALISA WARREN, PH.D. |
|---|---|---|---|
| GOVERNOR | DEPARTMENT DIRECTOR | COMMISSION CHAIR | EXECUTIVE DIRECTOR |

October 1, 2021

Kevin Scott
27 Ranchview Drive
Florissant, MO  63033

RE:  Scott vs. GKN
     FE-09/21-33661      560-2021-02539

This is to inform you that when you filed your complaint with the Equal Employment Opportunity Commission (EEOC) it was also filed with the Missouri Commission on Human Rights (MCHR).

**This complaint will be investigated by the EEOC.** You are encouraged to cooperate fully in the investigation. An investigator from that agency will be in contact with you.

The Missouri Human Rights Act provides that you may request a right to sue letter. Such a letter would allow you to file suit in state court against the Respondent named in your complaint using your own resources. MCHR closes its case when it issues a right to sue letter.

If MCHR adopts EEOC's finding and closes your complaint, then you will not be able to get a right to sue letter from MCHR. If you want a right to sue letter, then you may request one in writing at any time. If you have requested a right to sue letter and MCHR has not completed its administrative processing of your complaint after it has been on file for over 180 days, then MCHR will issue your right to sue letter.

Respectfully,

*Teresa Farris*
*Lead Administrative Support Assistant*
*Missouri Commission on Human Rights – Jefferson City*
*Teresa.Farris@Labor.Mo.Gov*

☑                                     ☐                                  ☐                                ☐
JEFFERSON CITY OFFICE          ST. LOUIS OFFICE              KANSAS CITY OFFICE          SIKESTON OFFICE
421 E. DUNKLIN ST.        111 N. 7TH STREET, SUITE 903         P.O. BOX 1129       106 ARTHUR STREET, SUITE D
P.O. BOX 1129            ST. LOUIS, MO 63101-2100       JEFFERSON CITY, 65102-1129   SIKESTON, MO 63801-5454
JEFFERSON CITY, MO 65102-1129      PHONE: 314-340-7590            FAX: 816-889-3582        FAX: 573-472-5321
PHONE: 573-751-3325             FAX: 314-340-7238
FAX: 573-751-2905

*Missouri Commission on Human Rights is an equal opportunity employer/program. Auxiliary aides and services are available upon request to individuals with disabilities.*
TDD/TTY:    1-800-735-2966 (TDD)    Relay Missouri: 711
www.labor.mo.gov/mohumanrights        E-Mail: mchr@labor.mo.gov

**Section 9**

Days of sick leave, as defined in Section 1 of this Article, shall not be considered as absenteeism for purposes of disciplinary action or adjusting vacation or sick leave anniversary dates.

## ARTICLE 25 – OVERTIME

It is the desire of the Company to distribute overtime as equally as practicable in light of the work to be performed by shift, department, and classification. Both the Union and the Company recognize that the individuals who perform the work must be qualified for and familiar with the specific work. Every effort will be made to adjust any unequal distribution of overtime to sixty (60) hours between the maximum and minimum hours of overtime within the shift, department, and job classification which may have occurred in any calendar quarter during the next succeeding calendar quarter. The Supervisors and Stewards shall review the overtime records on a monthly basis to see that the above policy is being followed. The Company will strive to meet its overtime requirements on a voluntary basis when practical. In reviewing the distribution of overtime:

A. All hours worked or refused involving overtime shall be charged. Except as provided elsewhere in these guidelines.

B. All time to be charged to the nearest 1/10 of an hour.

C. A probationary employee may not work overtime unless his entire department on his/her shift has been offered overtime to work that day.

D. Refusal of overtime during a funeral leave, on the day(s) of vacation, jury duty or short- term military reserve training shall not be charged.

E. When an employee is transferred into another department or to another shift, he will be charged with the average number of hours worked by their classification of workers of the new

51

Exhibit 1

2 of 19

**Scott, Kevin**

| | |
|---|---|
| **Subject:** | Kevin Scott OV Stamp |
| **Location:** | CR_OPS (Seat 20) |
| **Start:** | Wed 5/27/2020 7:30 AM |
| **End:** | Wed 5/27/2020 8:00 AM |
| **Show Time As:** | Tentative |
| **Recurrence:** | (none) |
| **Meeting Status:** | Not yet responded |
| **Organizer:** | Hemmer, Susan |
| **Required Attendees:** | Gholston, Karl; Laffleur, Tim; Tuohy, Matthew; Dorado, Omar; Scott, Kevin |

Let's all convene together (leaders and employee) to sort out Kevin's OV stamp please. I appreciate your participation.

Pre settlement

Pre-
settlement

Exhibit 1 (3 of 19)

## Steward Complaint Log
### IAMAW District 837

Grievant's Name: Kevin Scott  Clock Number: 600747  Classification: Bonding

Department: 10878  Shift: 3rd  Building: 2  Dept. Phone: 43052  Local Lodge: 387

Address: 27 Ranchview  City: St Louis  State: Mo  Zip: 123033
Dr

Home Phone: 314-306- 0696  Rate of Pay: —  Seniority Date: 2017

Shop Steward: Jason Beck Department Phone: _____  Cell Number (314) 401-3851

Violation: Discrimination  Article: 11  Section: 1

Date of Occurrence: 7-1-21  Date Steward Notified: _____  Date Filed: _____

**Complaint**

See Attachments

*total of 16 pages, plus seniority Reports,

**Foreman's Decision**

Foreman's Name: _____  Dept. Phone Number: _____  Pager Number: _____  Date: _____

**Stewards Remarks**

Exhibit
1 (4)

Pre settlement

Kevin Scott

600747

5/11/2021

I'm filing this HR complaint, because I have been denied the opportunity to acquire a tack 1 OV stamp. I have the emails proving my case. It started when my then team leader Mark Corey had me go through all of my testing and OJT to acquire my stamp and still I was denied. The email went to Don Dubois, (training) Shahrukh, Muhammad, Linda Sieckmann (quality), Ben Roth (VSM), Brigitte Kellar (Stamp Control) etc.... and still no response. So on about 5/27/2020 The HR manager at the time Sue Hemmer called for a meeting and present at that meeting was Matthew Tuohy, Karl Gholston, Sue Hemmer and myself. I was ask why I wanted an OV stamp and I told Matthew Tuohy that being on the cutters we from time to time have FAI that come through my station, and in order to acquire a FAI track 20 stamp a person would need to have trained their OV track 1 first. So after the meeting I was under the impression that I would eventually get my OV track 1 stamp only to continue to wait. Now recently I look on the 3C Log charts and also the team competency board in the AGFM, and now I see need a track 20 operator!!!!! So now I'm asking HR to look on the board and also the chart as well to see how Matthew Tuohy have denied my rights to be trained under Section B in the Employee Handbook under the equal employment opportunity policy. He's the VSM over my department, so he's responsible. I have emails that was provided by Mark Corey who was my team leader at the time proving to me that he was trying and that my denial was coming from upper management. So why am I being denied????? So I do know that Matthew Tuohy is now responsible, because he's my VSM in my department.

Attach are the emails proving my case.

received
5/11/21
Kelly Niedringhaus

Exhibit (1). 5

**Scott, Kevin**

| | |
|---|---|
| **From:** | Scott, Kevin |
| **Sent:** | Friday, January 21, 2022 12:20 AM |
| **To:** | Gholston, Karl |
| **Cc:** | Niedringhaus, Kelly |
| **Subject:** | My OJT for my track 20 and track 1 OV stamps |

I writing because I'm still waiting on my OJT for my track 1 and track 20 OV stamps that I was told would happen, but have yet happen??????

Pre-settlement

Exhibit 1 (6)

**Scott, Kevin**

| | |
|---|---|
| **From:** | Scott, Kevin |
| **Sent:** | Sunday, January 23, 2022 11:43 PM |
| **To:** | Gholston, Karl |
| **Subject:** | RE: My OJT for my track 20 and track 1 OV stamps |

Ive been hearing that for over 2 years of empty promises and lies. I told you before over and over again im ready anytime all I ever get from you is excuses to continue to promote discriminatory behavior when it comes to blacks training and getting promoted

**From:** Gholston, Karl
**Sent:** Friday, January 21, 2022 1:38 AM
**To:** Scott, Kevin <Kevin.Scott@gknads.com>
**Cc:** Niedringhaus, Kelly <Kelly.Niedringhaus@gknads.com>
**Subject:** RE: My OJT for my track 20 and track 1 OV stamps

Will work with 1st shift to accommodate .When are you available to go on first to get it complete?

**From:** Scott, Kevin
**Sent:** Friday, January 21, 2022 12:21 AM
**To:** Gholston, Karl <Karl.Gholston@gknads.com>
**Cc:** Niedringhaus, Kelly <Kelly.Niedringhaus@gknads.com>
**Subject:** My OJT for my track 20 and track 1 OV stamps

I writing because I'm still waiting on my OJT for my track 1 and track 20 OV stamps that I was told would happen, but have yet happen??????

1

Exbit 1(C)

Post Settlement



(169 unread) - kevinscott1977@yahoo.com - Yahoo Mail

HOME    MAIL    NEWS    FINANCE    SPORTS    ENTERTAINMENT    LIFE    SHOPPING    YAHOO PLUS    MORE    Upgrade Now

Find messages, documents, photos or people

Home

Compose

← Back    Archive    Move    Delete    Spam    •••    ▲ ▼ ✕

Inbox    169
Unread
Starred
Drafts    5
Sent
Archive
Spam
Trash
∧ Less

Views    Hide
Photos
Documents
Subscriptions
Deals
Groceries
Receipts
Travel

Folders    Hide
+ New Folder

• Fwd: U.S. EEOC Mediation Conference, Kevin Scott vs.    Yahoo/Inbox ⭐
GKN, EEOC Charge Number: 560-2021-02539

U.S. EEOC Mediation Conference, Kevin... View on Calendar

When            Who
9:30 AM - 4:30 PM    3 guests invited

Where
https://eeoc.zoomgov....

WED, JAN

Are you going?  Edit

• Kevin Scott <ksgeorge0612@gmail.com:    Mon, Dec 13, 2021 at 10:15 AM  ⭐
To: kevinscott1977@yahoo.com

—— Forwarded message ——
From: JAMES HABAS <JAMES.HABAS@eeoc.gov>
Date: Mon, Dec 13, 2021, 10:04 AM
Subject: U.S. EEOC Mediation Conference, Kevin Scott vs. GKN, EEOC Charge Number: 560-2021-02539
To: Mia, AW <AW.Mia@usa.olmaerospace.com>, ksgeorge0612@gmail.com
<ksgeorge0612@gmail.com>

**Supervisor: Karl Gholston**          Exbit I(8) **OVERTIME SUMMARY**          **Weekending Date: 11/13/2022**

| Department: 1087BC CNC Plycut - Shift 3 | | | Shift 3 | | Classification: Bonding Mechanic | | | |
|---|---|---|---|---|---|---|---|---|
| **EMPLOYEE** | **HRS** | **MON** | **TUE** | **WED** | **THU** | **FRI** | **SAT** | **SUN** |
| Pierce II, Stephen | 1444.7 | | | | | | A - 8 hrs | |
| Draine, Jonathan | 1447.3 | | | | | | | |
| Marty, Matthew | 1447.4 | | | | | | | |
| Scott, Kevin | 1454.0 | | | | | | | |
| Barnes, Dyesheka | 1459.6 | | | | | | A - 8 hrs | |
| **Begin Overtime Difference** | **14.9** | | | | | **End Overtime Difference** | | **24.3** |

Date: 11/9/2022 12:32:34 AM

**Supervisor: Karl Gholston**      **OVERTIME SUMMARY**      **Weekending Date: 11/20/2022**

| Department: 1087BC CNC Plycut - Shift 3 | | | Shift 3 | | Classification: Bonding Mechanic | | | |
|---|---|---|---|---|---|---|---|---|
| EMPLOYEE | HRS | MON | TUE | WED | THU | FRI | SAT | SUN |
| Draine, Jonathan | 1447.3 | | | | | | R - 8 hrs | |
| Scott, Kevin | 1454.0 | | | | | | A - 8 hrs | |
| Pierce II, Stephen | 1472.7 | | | | | | | |
| Marty, Matthew | 1475.4 | | | | | | A - 8 hrs | |
| Barnes, Dyesheka | 1487.6 | | | | | | | |
| Begin Overtime Difference | 40.3 | | | | | End Overtime Difference | | 28.3 |

Exbit 1

-7-(9)

Date: 11/17/2022 4:22:15 AM

OVERTIME SUMMARY

**...sor: Rebecca Milligan**

**Week ending Date: 11/20/2022**

| EMPLOYEE | HRS | MON | TUE | WED | THU | FRI | SAT | SUN |
|---|---|---|---|---|---|---|---|---|
| Department: 1087BA CNC Plycut - Shift 1 | | | | Shift 1 | | Classification: Bonding Mechanic | | |
| Powell, Vicki | 1809.6 | R - 4 hrs | R - 4 hrs | R - 4 hrs | A - 2 hrs R - 2 hrs | A - 2 hrs R - 2 hrs | R - 8 hrs | |
| Booze, Roy | 1871.9 | | | | | | R - 8 hrs | |
| Miller, Trip | 1881.1 | | | | | | A - 4 hrs R - 4 hrs | |
| Vardeman, Johnathan | 1890.6 | | | | | | A - 8 hrs | |
| Bogan, Luther | 1893.3 | | | | | | R - 8 hrs | |
| Draine, Edward | 2065.6 | R - 2 hrs | R - 2 hrs | A - 2 hrs | A - 2 hrs | A - 2 hrs | R - 8 hrs | |
| **Begin Overtime Difference** | **256.0** | | | | | **End Overtime Difference** | | **241.0** |

Exhibit 1

(10)

Post settlement

Date: 11/18/2022 11:26:53 AM

Exhibit 1 (11)

Presettlement

**Scott, Kevin**

| | |
|---|---|
| **From:** | Niedringhaus, Kelly |
| **Sent:** | Wednesday, July 21, 2021 3:51 PM |
| **To:** | Scott, Kevin |
| **Subject:** | RE: Document received 7.6.21 |

Kevin,

I wanted you to know my Boss Paul and I have a meeting with quality on their processes tomorrow 7/22/21. I plan to address the need for stamps on 3rd shift.

I will follow up once I have more information ,

Thank you,
Kelly


**From:** Niedringhaus, Kelly
**Sent:** Thursday, July 8, 2021 2:38 PM
**To:** Scott, Kevin <Kevin.Scott2@usa.gknaerospace.com>
**Subject:** Document received 7.6.21

Kevin,

After reviewing your document, one of the few things that I hear is that you are interested in obtaining your OV stamp. I do not make decisions on the departmental need for quality stamps, I have reached out to your team leader to get more insight on the need in your department and shift.

I will follow up once I know more.

The other concerns listed on the above dated document will be reviewed and coinsidered as well.

Thank you,
kelly


**Kelly Niedringhaus | Labor Relations Manager | GKN Aerospace St. Louis**
142 J.S. McDonnell Blvd | Hazelwood | Missouri | 63042 | USA
Cell: 314 619 9683 | Office: 314 264 4147 | Fax: 314 264 3036
Kelly.Niedringhaus@usa.gknaerospace.com | www.gknaerospace.com

1

Post
settlement

Exhibit |
(12)

# Steward Complaint Log
## IAMAW District 837

Grievant's Name: Kevin Scott    Clock Number: 602747    Classification: Bonding Mech

Department: 1087B    Shift: 3    Building: 2    Dept. Phone: _____    Local Lodge: 387

Address: 1471 Stoneburg ct    City: St. Louis    State: Mo    Zip: 63033

Home Phone: N/A    Rate of Pay: N/A    Seniority Date: 7-24-17

Shop Steward: _____    Department Phone: _____    Cell Number 314-709-5146

Violation: Retaliation    Article: 11    Section: 2

Date of Occurrence: 10-8-88 / 10-9-22    Date Steward Notified: 10-10-22    Date Filed: 10-10-22

### Complaint

I writing this in response of feeling like I'm being retaliated against; because of my previous filings against the company when it comes to overtime. My previous HR complaint on 1/27/22 (overtime) along with other HR complaints, shows a consistent pattern of Retaliatory practices here at GRN. I was not allowed to work on (10/9/22) but yet another person from a different shift was allowed to work on my shift. The same person was allowed to work on SAT as well.

(10/8/22)

### Foreman's Decision

Foreman's Name: Karl Glholston    Dept Phone Number: 314 503 5572    Pager Number: _____    Date: 10/12/22

This was not retaliation, it was a scheduling issue/miscommunication with lead employee. Employee started early and worked 1 hour on 3 shift when employee of that shift were not asked to work.

Settlement: This will be managed more closely moving forward to not happen again

### Stewards Remarks

Exhibit 1 (13)          Post Settlement

IM WRITING THIS GRIEVANCE, BECAUSE I FEEL LIKE KARL IS CONTINUING TO RETALIATE AGAINST ME.

THE AGFM 1 MACHINE STARTED BACK IN PRODUCTION AFTER MONTHS OF BEING DOWN, SO I WAS RUNNING IT AT THE 50% THE RATE WE WAS RUNNING AT BEFORE THE MACHINE BROKE DOWN. SO KARL CAME OVER AND TOLD ME TO SPEED IT UP TO 75%. I TOLD HIM I NEEDED TO SPEAK WITH MY SHOP STEWARD, BECAUSE I NEED A WITNESS OF HIM TELLING ME TO TURN THE MACHINE UP, EVEN THOUGH IT JUST CAME BACK INTO PRODUCTION AFTER MONTHS OF BEING OUT OF COMMISSION. AND THAT'S WHEN HE TOLD ME TO GET OFF OF THE MACHINE AND GO TO WORK AT THE AGFM2. SO HE BROUGHT ANOTHER PERSON TO WORK AT THE MACHINE I WAS WORKING AT. HIS CONSTANT HARASSMENT AND RETALIATORY ACTIONS AGAINST ME IS BECAUSE OF MY PREVIOUS FILLINGS I HAD AGAINST HIM AND ITS ALL ON RECORD.


KEVIN SCOTT

600747

10/18/22

Exhibit 1 (14)

**IM WRITING THIS GRIEVANCE BECAUSE I FEEL THE COMPANY HAS VIOLATED MY RIGHTS UNDER ARTICLE SEC 2 (DISCRIMINATION), AND THAT'S RETAILITAION. I FEEL LIKE I WAS RETAILIATED AGAINST, BECAUSE OF MY PREVIOUS FILINGS AGAINST THE COMPANY, AND THAT'S CONCERNING OVERTIME. I HAVE HAD PREVIOUS FILLINGS WITH THIS SAME ISSUE AND KARL HAS CONTINUED TO DENY ME SUNDAYS, AND YET EVERYONE ONE MY SHIFT HAS BEEN SCHEDULED FOR SUNDAYS DURING THIS ROTATION, AND ALSO FIRST SHIFT IS ABLE TO OFFER ALL OF THEIR PEOPLE EVERY WEEKEND WITH MORE PEOPLE ON SHIFT AND YET KARL HAS CONSISTENLY GIVEN ME EVERY OTHER WEEK AND SAT ONLY!!!!!  THIS ACTION HAS ALLOWED AN ENVIRONMENT OF THE LACK OF TRANSPARENCY AND THE CONTINUED MANIPULATION OF THE OVERTIME SUMMARY, THUS CAUSING THE ENUMERATION OF VERY HOSTILE AND RETAILITORIAL ENVIRONMENT.  The EEO anti-retaliation provisions also make it unlawful to retaliate against an individual for opposing any practice made unlawful under the employment discrimination statutes.**

**KEVIN SCOTT**

**600747 11/16/2022**

Exhibit 1 (15)

## Steward Complaint Log
## IAMAW District 837

**Grievant's Name:** Kevin Scott **Clock Number:** 600747 **Classification:** Bonding Mechanic

**Department:** 10873C **Shift:** 3 **Building:** 2 **Dept. Phone:** _____ **Local Lodge:** 837

**Address:** 27 Branchview Dr **City:** St Louis **State:** Mo **Zip:** 63033

**Home Phone:** 314-3050646 **Rate of Pay:** _____ **Seniority Date:** 7-7-17

**Shop Steward:** Steve Busch **Department Phone:** _____ **Pager Number:** _____

**Violation:** Discrimination **Article:** 11 **Section:** 2

**Date of Occurrence:** 11-17-22 **Date Steward Notified:** 11-17-22 **Date Filed:** 11-17-22

### Complaint

See attached copy

Right to manage does not apply if its because of Discrimination

or Retailiation Reasons.

### Foreman's Decision

**Foreman's Name:** _____ **Dept. Phone Number:** _____ **Pager Number:** _____ **Date:** _____

### Stewards Remarks

SEE ATTACHED COPY



*Exhbit 1.(16)* — *Pre settlement*

## GK20 - FAI (Qualifications Limited to Composite Structures)

FAI track qualifications work in conjunction with the employee's qualification track(s).

| EMPLOYEE # | EMPLOYEE | OV STAMP # |
|---|---|---|
| 184731 | Vollmer, Don | 385 |
| 204366 | McEwen, Frank | 229 |
| 209992 | Graf, Robert | 138 |
| 218021 | Wiesemeyer, Gerry | 090 |
| 231360 | Saylor, Greg | 076 |
| 231361 | Saylor, Virginia | 643 |
| 231840 | Goforth, Mike | 617 |
| 232979 | Dupske, Frank | 156 |
| 233360 | Sneed, William | 058 |
| 235745 | Chestnut, Karen | 070 |
| 242442 | Eller, Greg | 618 |
| 247797 | Doebber, Chris | 247 |
| 248023 | Spurlock, Sandra | 686 |
| 248032 | Wimberly, William | 638 |
| 262562 | Foster, David | 780 |
| 273352 | Camren, Tim | 492 |
| 273393 | Hammock, Daniel | 310 |
| 282688 | Sanders, Kadee | 626 |
| 285386 | Slater, Andrew | 342 |
| 600072 | Dallas, John | 490 |
| 600080 | Wilson, Ross | 685 |
| 600101 | Smith, Tim | 388 |
| 600126 | Ray, Steven | 061 |
| 600167 | Tyler, John | 440 |
| 600171 | Steele, Kathy | 119 |
| 600193 | Connors, Nicholas | 777 |

Exhibit 1 (17)

| 600223 | Desherlia, Bryan | 308 |
| 600226 | Tripp, Jason | 179 |
| 600244 | Stegall, Debora | 663 |
| 600261 | Cowan, Benjamin | 451 |
| 600281 | Schulze, Arthur | 547 |
| 600296 | Frago, Zachary | 550 |
| 600300 | Smith, Scott | 609 |
| 600304 | Bast, Eric | 525 |
| 600340 | Randle, Jeff | 241 |
| 600369 | Stevenson, David | 264 |
| 600387 | Tinnon, John | 253 |
| 600398 | Domko, Duane | 359 |
| 600416 | Able, Ronald | 320 |
| 600423 | Clancy, William | 318 |
| 600432 | Piwowarczyk, Jr, Mike | 144 |
| 600446 | Pegue, Matthew | 280 |
| 600459 | Elliott, Randy | 290 |
| 600480 | Duchscherer, Bill | 324 |
| 600758 | Gilbert, Marsha | 158 |





Exhibit (18) - Post Settlement

## GK20 - FAI (Qualifications Limited to Composite Structures)

FAI track qualifications work in conjunction with the employee's qualification track(s).

| EMPLOYEE # | EMPLOYEE | OV STAMP # |
|---|---|---|
| 204366 | McEwen, Frank | 229 |
| 209169 | Williams, Dave | 574 |
| 209992 | Graf, Robert | 138 |
| 231840 | Goforth, Mike | 617 |
| 232979 | Dupske, Frank | 156 |
| 235745 | Chestnut, Karen | 070 |
| 242442 | Eller, Greg | 618 |
| 247797 | Doebber, Chris | 247 |
| 248032 | Wimberly, William | 638 |
| 262562 | Foster, David | 780 |
| 273352 | Camren, Tim | 492 |
| 273393 | Hammock, Daniel | 310 |
| 282688 | Sanders, Kadee | 626 |
| 285386 | Slater, Andrew | 342 |
| 600072 | Dallas, John | 490 |
| 600080 | Wilson, Ross | 685 |
| 600101 | Smith, Tim | 388 |
| 600126 | Ray, Steven | 061 |
| 600167 | Tyler, John | 440 |
| 600171 | Steele, Kathy | 119 |
| 600193 | Connors, Nicholas | 777 |
| 600226 | Tripp, Jason | 179 |
| 600244 | Stegall, Debora | 663 |
| 600261 | Cowan, Benjamin | 451 |
| 600281 | Schulze, Arthur | 547 |
| 600300 | Smith, Scott | 781 |

GKN STAMP CENTER

Exhibit 1 (19)

Page 2 of 2

| 600340 | Randle, Jeff | 241 |
| 600369 | Stevenson, David | 264 |
| 600378 | Patton, Shanika | 581 |
| 600387 | Tinnon, John | 253 |
| 600398 | Domko, Duane | 359 |
| 600423 | Clancy, William | 318 |
| 600432 | Piwowarczyk, Jr, Mike | 144 |
| 600446 | Pegue, Matthew | 280 |
| 600459 | Elliott, Randy | 290 |
| 600480 | Duchscherer, Bill | 324 |
| 600592 | Lowers, Lee | 742 |
| 600727 | Coonce, David | 614 |
| 600751 | Miller, Trip | 802 |
| 600758 | Gilbert, Marsha | 158 |
| 600817 | Swatek, Dave | 714 |
| 601057 | Artem, Moore | 774 |

Post settlement

*Exhibit (1 of 2)*



## NEW ABSENCE/LEAVE CLAIM

Absence/Leave AC-22-398327
Open

Employees Own Illness or Injury
Intermittent

Sat, Jan 1, 2022

Fri, Jul 1, 2022

3 times every week for 1 day

3 times every week for 3 days

0.20 0.04 0.00 0.20      1 1 2 2 1 0.20 1 3 2 13      2 1 1 2 0.20 4      0.20 0.09 0.20 0.20

Absence/Leave AC-21-379920
Closed

Employees Own Illness or Injury
Continuous

Mon, Dec 20, 2021

Fri, Dec 24, 2021

1 week

Absence/Leave AC-21-241339
Closed

Employees Own Illness or Injury
Intermittent

Sat, Dec 26, 2020

Tue, Jan 11, 2022

3 times every week for 3 days

3 times every week for 3 days

3 3 3 0.20 0.20 0.20 5 40.00 0.20 12 0.20 1    2 25 4 2 2 4 3 4 1 6 2 0 0.60 0.20 2 3    0

ESP 2
Exhibit

SCOTT, KEVIN

| Summaries | 3 | ❯ |
| Help and Support | 1 | ❯ |
| Absence/Leave | 3 | ❯ |
| Disability Claims | 0 | ❯ |

## Absence/Leave Time Summary

Regulations ☑ (https://standard.secure.force.com/eep/resource/1636595663000/cvab__AbsenceRegs/AbsLH/Federal+FMLA.html)
**Federal FMLA**



GKN AEROSPACE                    Exhibit 3                    Print Date: 04/25/2022

## Discipline Action Form
### 220035-A01

| YEE NAME | EMPLY NO | DEPT NO | MANAGER | ACTION DATE |
|---|---|---|---|---|
| Kevin, George | 600747 | 01087B | Karl Gholston | 04/20/2022 |

| g Level | | | Action Taken | |
|---|---|---|---|---|
| Verbal Warning | ☐ Terminated | | ☒ Reprimand | |
| Written Warning - 1st | | | ☐ Suspension | |
| Written Warning - 2nd | | | ☐ Discharge | |
| Final Written Warning | | | | |

is disciplinary action is being assessed to you for the following reason:
iolation of GKN RULES and REGULATIONS 3. Produce, design and support our products and services in a manner that romotes the interest of GKN Aerospace, its employees, customers, and suppliers. * Sleeping. * Misuse of company time. )n April 20, 2022 at approx... 0216 hours, I, Team Leader Jose Brackins, was checking in on the work progress at the Cutters. I ioticed Kevin Scott was sleeping in a chair behind the post by the AGFM. Mr. Scott had his left safety shoe off in a manner in which he was preparing to sleep (See attached Photo). I then tapped him on the left shoulder three times before he woke up. I asked him if he was ok, and He said he was fine. After waking him, I told him that he needs to get back to work. I then left the room and went back to my desk. At approx. 0236 hours, I returned to the cutter area to make sure he was working and found him sleeping again in the same manner as before. I then woke him up for the second time and told him that he can't be sleeping on the job and that I was going to issue discipline for his actions.

Prior Violation(s)
02/19/2021 - Verbal Warning - Rule #2 * Damaging, defacing, or destroying company, employee, customer, or supplier property through willfulness or negligence.
06/22/2018 - Verbal Warning - Other Violations: Attendance Policy

Immediate corrective action must be taken to resolve this matter. Any failure to adhere to this matter will result in further disciplinary action being taken up to and including termination of employment

If not discharged, it is expected that your behavior will be corrected immediately.
If not corrected, additional appropriate action may be necessary.

| Supervisor / Manager | Date | Shop Steward | Date |
|---|---|---|---|
| *Karl Gholston* | 4/25/22 | *Jason Beeh* | 4-25-22 |

I have read and understand the contents of this document and have received a copy.
My signature does not mean I agree with this action.

cc: Employee
Supervisor
Human Resource
Union

| Employee | Date |
|---|---|
| R.T.S. JB | 4-25-22 |

initial

| Manager | Employee |
|---|---|

You have been advised of the availability of the GKN Employee Assistance Program (EAP).
www.achievesolutions.net/gkn  1.866.756.6255

NOTE: This document is not intended to conclude that all discipline will follow this format or level. Appropriate levels of discipline and format will be issued depending upon the seriousness of the violation at the discretion of the company..

Date: 4/26/2022



MIDWEST BONE AND JOINT SURGERY

30 Apex Drive Suite #1 Highland, IL 62249
Phone 618-654-5400 Fax 618-654-8787
Felix F Ungacta, MD Robert Leb, MD

Name: Kevin Scott
Address: 27 Ranchview Dr, St Louis, MO 63033
DOB: 6/12/1977
Phone:

THE PATIENT WAS SEEN IN MY OFFICE TODAY FOR LEFT KNEE PAIN. THE PATIENT MAY BE REQUIRED TO TAKE PAIN MEDICATION WHICH MAY CAUSE DROWSINESS.

MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS

# MISSOURI COMMISSION ON HUMAN RIGHTS

RECEIVED

AUG 20 20

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

ANNA S. HUI
DEPARTMENT DIRECTOR

AL LI
COMMISSION CHAIR

ALISA WARREN, PH.D.
EXECUTIVE DIRECTOR

MIKE KEHOE
GOVERNOR

August 8, 2025

Kevin Scott
1481 S. Waterford Drive
Florissant, MO 63033
Via Complainant Attorney Email: Kevinscott1977@yahoo.com

## NOTICE OF RIGHT TO SUE

RE:  Scott v. GKN Aerospace Hazelwood MO, FE-12/22-35511; 560-2023-00405

The Missouri Commission on Human Rights (MCHR) is terminating its proceedings and issuing this notice of your right to sue under the Missouri Human Rights Act because you have requested a notice of your right to sue.

This letter indicates your right to bring a civil action within 90 days of this notice against the respondent(s) named in the complaint. Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred but it must be brought no later than two years after the alleged cause occurred or its reasonable discovery. Upon issuance of this notice, the MCHR is terminating all proceedings relating to the complaint. No person may file or reinstate a complaint with the MCHR after the issuance of a notice of right to sue relating to the same practice or act. You are hereby notified of your right to sue the Respondent(s) named in your complaint in state circuit court. **THIS MUST BE DONE WITHIN 90 DAYS OF THE DATE OF THIS NOTICE OR YOUR RIGHT TO SUE IS LOST**.

You are also notified that the Executive Director is hereby administratively closing this case and terminating all MCHR proceedings relating to it. This notice of right to sue has no effect on the suit-filing period for any federal claims. This notice of right to sue is being issued as required by Section 213.111.1, RSMo, because it has been over 180 days after the filing of this complaint and MCHR has not completed its administrative processing.

Also, please note, that your cause of action may be beyond the 2 year statute of limitations which may prevent you from pursuing your claim in court.

(CONTINUED ON NEXT PAGE)

*The Missouri Commission on Human Rights is an equal opportunity employer/program.*
*Auxiliary aides and services are available upon request to individuals with disabilities.*

TDD/TTY: 1-800-735-2966    •    Relay Missouri: 711    •    www.labor.mo.gov/discrimination    •    Email: mchr@labor.mo.gov

RE:  Scott v. GKN Aerospace Hazelwood MO
FE-12/22-35511; 560-2023-00405

Respectfully,

Alisa Warren, Ph.D.
Executive Director

CC:
GKN Aerospace Hazelwood MO
142 James S. McDonnell blvd.
Hazelwood, MO 63042
*Via Respondent Attorney Email*

Katrina Morgan
Attorney, Jackson Lewis PC
1 North Brentwood Boulevard
Suite 1150
Saint Louis, MO 63105
katrina.morgan@jacksonlewis.com

*The Missouri Commission on Human Rights is an equal opportunity employer/program.*
*Auxiliary aides and services are available upon request to individuals with disabilities.*

TDD/TTY: 1-800-735-2966   •   Relay Missouri: 711   •   www.labor.mo.gov/discrimination   •   Email: mchr@labor.mo.gov

RECEIVED

AUG 2 0 2025

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**St. Louis District Office**
1222 Spruce St, Rm 8 100
St Louis, MO 63103
(314) 798-1960
Website: www.eeoc.gov

RECEIVED

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

JUL 3 1 2025

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST LOUIS

Issued On: 05/02/2025

JASON D. BECK
3820 TRINITY CIR
FLORISSANT, MO 63034
Charge No: 560-2024-03635

EEOC Representative and email:     JASON WILSON
Federal Investigator
jason.wilson@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 560-2024-03635.

On behalf of the Commission,

Digitally Signed By:David Davis
05/02/2025
David Davis
District Director

Nov17
8-15